CASE NO. CC-23-1120

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

---

In re MARIA TERESA MELENDEZ REY
*Debtor.*

---

MARIA TERESA MELENDEZ REY
*Appellant,*

vs.

PETER URQUIJO
*Appellee;*

---

Appeal From Memorandum of Decision and Order of the United States
Bankruptcy Court for the Central District of California
Case No. 2:22-bk-14119 WB

---

**APPELLANT'S OPENING BRIEF**

---

SHIODA LANGLEY & CHANG, LLP
Christopher J. Langley, SBN: 258851
1063 E. Las Tunas Dr.,
San Gabriel, CA 91776
Tel: (951) 383-3388 / Fax: (877) 483-4434
chris@slclawoffice.com
Attorney for Appellant
Maria Teresa Melendez Rey

## **TABLE OF CONTENTS**

I. JURISDICTIONAL STATEMENT…………………………………………7

II. STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW…..8

III. STATEMENT OF THE CASE……………………………………………9

   A. Introduction………………………………………………………….9

   B. Factual and Procedural Background………………………………..10

IV. SUMMARY OF ARGUMENT………………………………………..13

V. ARGUMENT……………………………………………..................17

   A. The Homestead Exemption Protects the Residence as Well as the Land Upon Which it is Situated, Even if There are Other Uses Incidental to the Homestead……………….......................................................17

   B. Because No Fair Market Value of the Separate Units Can be Established, The Bankruptcy Court's Ruling Defies California Enforcement of Judgment Law Which Recognizes the Homestead Exemption………………... ….25

   C. The Bankruptcy Court's Ruling Will Discourage the Construction of Accessory Dwelling Units, Contrary to Current California Policies………33

VI. CONCLUSION……………………………………………………..35


CERTIFICATE OF COMPLIANCE…………………………………………...37

CERTIFICATE OF SERVICE………………………………………………………38

CERTIFICATION OF INTERESTED PARTIES…………………………………39

DECLARATION OF RELATED CASES………………………….................40

<u>Cases</u>

*Amin v Khazindar*, 112 Cal. App. 4th 582, 588 (2003)…………………….…..35

*Arkison v. Gitts (In re Gitts),* 116 B.R. 174, 176 (9th Cir. BAP 1990)…………….7

*Bodden v. Community Nat'l Bank*, 271 Cal. App. 2d 432 (1969)…………………23

*In re Bond*, 2006 WL 6810941 (9th Cir. BAP 2006)……………………………..20

*Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (9th Cir. BAP 2016)……….13, 18

*Estate of Schmelz*, 259 Cal. App. 2d 440 (1968)……………….......................15

*Francis v. Wallace (In re Francis),* 505 B.R. 914, 917 (9th Cir. BAP 2014)............8

*In re Gebhart*, 621 F. 3d 1206 (9th Cir. 2010)……………………………………..8

*Gregg v* Bostwick, 33 Cal. 220 (1867)……………………………………………19

*In re Jarrell*, 34 F. 2d 970 (S.D. Cal. 1929)……………………………...20, 21

*Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 17-18 (9th Cir. BAP 2003)……...13, 18

*Klein v. Chappell (In re Chappell),* 373 B.R. 73, 76 (9th Cir. BAP 2007)………....8

*In re Ligget*, 117 Cal. 352 (1867)……………………………………………………19

*McKay v. Gesford*, 163 Cal. 243, 248 (1912)……………………………………..22

*Nelson v. King (In re Nelson's Estate),* 224 Cal App.2d 138 (1964)……………....24

*Oppenheim v. Goodley*, 148 Cal App. 2d 325 (1957)……………………………..24

*Phelps v. Loop*, 64 Cal. App. 2d 332 (1944)……………………......................24

*Phillips v. Gilman (In re Gilman)*, 887 F. 3d 956, 961-62 (9th Cir. 2018)…………7

*Preblich v. Battley, 181 F. 3d 1048, 1056 (9th Cir.1999)*…………………………..7

*Rosenblum v. Levy (In re Levy),* 141 Cal. 646 (1904)……………………………..24

*In re Schmelz Estate*, 259 Cal. App. 2d 440 (1968)………………………………21

*In re Shepardson*, 28 F. 2d 353 (S.D. Cal. 1928)…………………………………22

*SK Foods L.P. v. Sharp (In re SK Foods L.P.*, 676 F. 3d 798, 802 (9th Cir. 2012)…8

*Warner v. Warner*, 144 Cal. 615 (1904)…………………………………………...22

Other Authorities

7 Miller & Starr California Real Estate § 24:22…………………………………..27

28 U.S.C. §§ 157(b)(2)(B) and 1334(a)………………………………..…………..7

28 U.S.C. § 158(b)………………………………………………………………….7

The Appraisal of Real Estate, 12th Ed. (2001), Chapter 2………………………..27

Bankruptcy Code, 11 U.S.C. §§ 101-1532…………………………………………7

Section 701.510………………………………………………………………...26

CCP § 704.710……………………………………………………………...14, 25

CCP §§ 704.710-704.850……………………………………………………13

CCP § 704.710(a)……………………………………………………………14

CCP § 704.710(a)(1)……………………………………………………………18

CCP § 704.710(c)………………………………………………………....18

CCP § 704.720……………………………………………………………….26

CCP §704.730……………………………………………………………11, 26

CCP § 704.740 (a)………………………………………………………...26

CCP §§ 704.750–704.780…………………………………………..15, 26

CCP § 704.780……………………………………………………………….26

CCP § 704.800……………………………………………………………….26

CCP §§ 704.910-704.995……………………………………………13

CCP § 1263.320……………………………………………………15, 27

Cal. Govt. Code § 64100, et seq…………………………………..19

Cal. Govt. Code §65852.21………………………………………….33

Cal. Govt. Code § 66410, et seq…………………………………..15

Cal. Govt. Code §66411.7………………………………………...33

Federal Rules of Bankruptcy Procedure 8002(a)………………………………..7

§ 1325(a)(4)……………………………………………………………...9

# I. JURISDICTIONAL STATEMENT

A. The issue before the court arises from the bankruptcy court sustaining an objection to a homestead, ruling that the exemption extends to only some portions of an undivided parcel of real property.  This matter is therefore a core proceeding and the bankruptcy court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(B) and 1334(a).

B.  The Bankruptcy Appellate Panel (the BAP) has jurisdiction over this appeal under 28 U.S.C. § 158(b).

C.  Timeliness:  The Order Sustaining Objection to Debtor's Homestead was entered by the bankruptcy court on June 30, 2023.  (EOR at p. 565).[1]  The Notice of Appeal was filed on July 10, 2023 (EOR at p. 567), within 14 days of entry of the order, as required by Rule 8002(a).[2]  Therefore, this appeal is timely.

D. Finality:  An order denying an exemption, whether in whole or in part, is a final appealable order.  *Preblich v. Battley*, 181 F. 3d 1048, 1056 (9th Cir.1999); *Phillips v. Gilman (In re Gilman)*, 887 F. 3d 956, 961-62 (9th Cir. 2018).  Such an order resolves and seriously addresses substantive rights and finally determines the discrete matter to which it was addressed, which generally controls whether an

---

[1] The Excerpts of Record are concurrently separately filed with the BAP as an Appendix.  Within the Appendix, the Excerpts of Record (EOR) have been consecutively paginated.  Therefore, references to the record are designated as EOR at p. ___.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

order in a bankruptcy case is final. *SK Foods L.P. v. Sharp (In re SK Foods L.P.*, 676 F. 3d 798, 802 (9th Cir. 2012). As such, the order on appeal is final.

## II. STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW

1. Whether the bankruptcy court erred in sustaining Creditor Peter Urquijo's objection to the Debtor's homestead exemption on real property located at 1922-1924 Bunker Ave., El Monte, California 91733, which is a single, undivided lot, by ruling that some portions of the lot are subject to the homestead exemption and other portions are not.

Standard of Review: "Whether the debtor has the right to claim an exemption is a question of law that we review de novo." *Arkison v. Gitts (In re Gitts),* 116 B.R. 174, 176 (9th Cir. BAP 1990). De novo review requires the appellate court to consider a matter anew, as if no decision had been made previously. *Francis v. Wallace (In re Francis),* 505 B.R. 914, 917 (9th Cir. BAP 2014). The determination of a homestead exemption based on undisputed facts is a legal conclusion which is reviewed de novo. *Klein v. Chappell (In re Chappell),* 373 B.R. 73, 76 (9th Cir. BAP 2007), *aff'd sub. nom., In re Gebhart*, 621 F. 3d 1206 (9th Cir. 2010).

///

## III.  STATEMENT OF THE CASE

### A.  Introduction

Relying on cases which primarily arose in probate proceedings and many of which were decided more than 100 years ago, the bankruptcy court ruled that a separate rental duplex situated on a single, undivided lot upon which Debtor Maria Teresa Melendez Rey (the Debtor) also resides may be apportioned in such a manner that part of the lot is subject to the Debtor's homestead exemption and part of the same lot is not. The Debtor asserts this ruling is flawed because the property in the cases relied upon could be legally divided and the considerations in probate proceedings are distinct from those before a bankruptcy court.  In addition, there is ample case law which holds that use of part of homestead property to earn income which is needed to make mortgage payments and to otherwise support the family does not disqualify that part from being protected by the homestead exemption. The evidence in the record shows that the Debtor relies on the rental income to make her mortgage payments and may not be able to afford her house without it. Moreover, the Debtor submits that this ruling puts her residence at risk of loss in her chapter 13 case, as she may not be able to afford payment of the newly created equity to meet the liquidation test of § 1325(a)(4) over the term of the plan.  This is a double whammy and there is a high likelihood that the house could be lost.

An equally troubling significance of such a ruling – that a homestead can be apportioned on an undivided lot – is the effect it may have on the current increase in the construction of Accessory Dwelling Units (ADU's), construction which is encouraged by recent California legislation, housing advocates, and local governments to help solve the affordable housing shortage in California.  The ADU's serve two purposes:  they allow a homeowner who otherwise could not afford a house access to additional income to make the mortgage payment and they also provide lower priced accommodations for tenants.  If such units create new value for the single lots upon which they are constructed, and that value cannot be protected by the now-generous California homestead exemption, it will create a substantial risk that homeowners can lose their homes to judgment creditors or in bankruptcy proceedings if their financial circumstances sour.   This appeal addresses why that undesirable outcome is not compelled by existing law.

### B.  Factual and Procedural Background[3]

The Debtor owns real property legally described as 1922-1924 Bunker Ave, South El Monte, California, where she resides (the "Property").  (EOR at p. 506).  The Property is a single indivisible parcel of land (APN 8113-014-008) with two

---

[3] These facts and procedural background are largely undisputed.  The Debtor asserts the standard of review is de novo.  Therefore, some of the EOR references are to the pleadings filed in support of and opposition to the Creditor's Objection to Homestead Exemption rather than to the underlying evidence which is referenced in and attached to those pleadings.  To the extent any fact appears to be in question, the underlying evidence will be cited.

unattached structures. (*Id.*) The Debtor resides in the house at 1922 Bunker and rents out the house at 1924 Bunker, currently used as a duplex. There is a garage attached to the duplex, one half used by a tenant and the other half used by the Debtor for storage. (EOR at pp. 273-274). She has continuously resided on the Property, acquired by her and her then-husband in 1997 (EOR at p. 23), since 2017. (EOR at p. 278). The Property is encumbered by a single trust deed which is secured by the entire parcel. (EOR at p. 23). Her schedules I and J show that she collects about $4141.00 in monthly rent, which largely allows her to make the monthly mortgage payment of $2915.00 and have funds for home maintenance. (EOR at pp. 76-77).

In July, 2022, the Debtor filed a chapter 7 petition. (EOR at p. 1). Creditor Peter Urquijo (Creditor) was the Debtor's former family law attorney, who holds a claim which represents a substantial portion of her unsecured debt. (EOR at pp. 25 and 278). The Debtor's Schedule C claimed a homestead exemption under California Code of Civil Procedure ("CCP") §704.730 on the entire property at 1922-1924 Bunker Ave in the amount of $626,400.00. (EOR at p. 21). On November 30, 2022, she filed a motion to convert the case to chapter 13 (EOR at p. 80) which was granted over Creditor's objections by order entered on February 8, 2023. (EOR at p. 248). The Debtor filed her chapter 13 plan on February 22, 2023

(EOR at p. 251). The plan provided for direct mortgage payments on the Property, secured debt payments on a car, and zero percent to unsecured creditors. (EOR at pp. 251-264).

On March 10, 2023, Creditor filed his Objection to Homestead Exemption, which asserted that the Debtor's homestead exemption should only be allowed to the extent that it covered the property at 1922 Bunker and should not be applicable to the rental duplex identified as 1924 Bunker. (EOR at pp. 266-302). The Objection described the multiple uses of the Property by the Debtor and by her tenants, facts primarily taken from the Debtor's Rule 2004 examination and not disputed by the Debtor. (EOR at pp. 266-275.) The Debtor filed her Opposition to the Objection to Homestead on March 22, 2023 (EOR at pp. 501-508), asserting that the homestead exemption applied to the entire parcel because it was her domicile consisting of a house together with outbuildings, all on one indivisible lot of land. (EOR at p. 502). Creditor filed his Reply on March 29, 2023. (EOR at p. 509).

The bankruptcy court heard the Objection on April 5, 2023, and took the matter under submission. (EOR at p. 571-595). It held a further hearing on May 17, 2023, at which time it announced its oral decision which was to sustain the objection, concluding that the homestead exemption did not apply to 1924 Bunker

and part of the garage allocated to that building.  (EOR at pp. 596-611).  On June

30, 2023, the bankruptcy court entered its Memorandum of Decision (EOR at p.

559-564) and the Order Sustaining Objection to Debtor's Homestead.  (EOR at pp.

565-566).  The Debtor filed her timely Notice of Appeal on July 10, 2023.  (EOR

at pp. 567-570).


## IV.  SUMMARY OF ARGUMENT

The Debtor asserts that the entire indivisible lot upon which her home and

rental duplex are situated is protected by the California homestead exemption

which she claimed in Schedule C.  California has opted out of the federal

exemptions, electing to utilize exemptions enacted by state law.  California statutes

provide two types of homestead exemptions, the declaration of homestead found at

CCP §§ 704.910-704.995, which applies to a voluntary sale of the homestead by

the owner, and the automatic homestead found at CCP §§ 704.710-704.850, which

protects a debtor from forced judicial sales of the homestead.  *Kelley v. Locke (In

re Kelley)*, 300 B.R. 11, 17-18 (9th Cir. BAP 2003).   The filing of a bankruptcy

petition constitutes a forced sale for purposes of the automatic homestead

exemption.  *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (9th Cir. BAP 2016);

In *re Kelley,* 300 B.R. at 17.   Therefore, the Debtor's applicable homestead is the

automatic exemption, which she claimed at a value of $626,400.00 on the petition date.[4]

A homestead is defined in California statutes as the principal dwelling in which the judgment debtor resided on the date a judgment lien attached (or here the petition date) and in which she continuously resided thereafter until the date a homestead determination is made. CCP § 704.710. The term "dwelling" means "a place where a person resides and may include but is not limited to…[a] house together with the outbuildings and the land upon which they are situated." CCP § 704.710(a).

The issue before this court is not complex. It turns on, among other things, what "together with the outbuildings and the land upon which they are situated" means when the Debtor's homestead parcel is one undivided lot which cannot be valued or sold separately but has two separate dwelling units. The Debtor submits that the cases argued by Creditor and primarily relied upon by the bankruptcy court all dealt with property which was either already divided into separate parcels or was easily divisible by court order, with no need to comply with any subdivision or lot split laws, such as the California Subdivision Map Act, Cal. Govt. Code §

---

[4] CCP § 704.730 establishes the amount of the homestead exemption as the greater of the countywide median sale price for a single-family home in the calendar year prior to the calendar year in which the judgment debtor claims the exemption, not to exceed an initial sum of $600,000 (increased annually by cost of living) or $300,000. Since the Debtor resided in Los Angeles County, she claimed the updated homestead exemption for that county which was applicable on the 2022 petition date.

66410, et seq.  The pertinent cases where the property in dispute is a single unsubdivided parcel hold that the homestead exemption protects the entire parcel, even when a separate, rented out dwelling unit exists.  *Estate of Schmelz*, 259 Cal. App. 2d 440 (1968).  In fact, reported California cases have allowed the homestead exemption to protect up to thirty units in an apartment building, a three flat building with separate entrances connected only by a rear stairway, and several contiguous lots which had a store and sometimes-rented cabins as well as the family home. A common holding in these cases was that the existence of additional houses for rental purposes on property occupied by a family residence cannot bar a valid homestead on the entire parcel.

The bankruptcy court's ruling comes asunder with the California procedures which control whether a judgment creditor can execute on a dwelling unit which is subject to a valid homestead exemption.  That procedure, found in CCP §§ 704.750–704.780, requires the court to determine the "fair market value of the dwelling."   The bankruptcy court's ruling makes that step impossible, because there is no fair market value of a portion of an indivisible lot.  The definition of fair market value is the highest price at which a seller would be willing to sell and a buyer would be willing and able to buy.  CCP § 1263.320.   Neither the house at 1922 Bunker nor the duplex at 1924 can be sold separately because the lot cannot

be divided.  By definition, there can be no fair market value of either portion because it is impossible for there to be a willing seller and a willing buyer.

The Creditor's appraisals in the record (EOR at pp. 318-355) are fatally flawed because they acknowledge the definition of fair market value but then proceed to make calculations for a divisible sale that cannot occur.  Since exemptions are defined by California law and California law requires a fair market value to execute on a judgment lien, the ruling cannot stand.  In addition, the bankruptcy court ruling creates unreasonable practical issues.   Since neither dwelling unit has a fair market value, a trustee in a chapter 7 will be unable to determine to what extent a claimed homestead exemption will be allowed if it applies to only one unit on an indivisible lot which otherwise is property of the estate.  Without knowing that value, the trustee will be unable to effectively administer the estate.

As counsel for the Debtor argued at the hearing before the bankruptcy court (EOR at p. 585), this is not a unique ruling which will only impact the Debtor.  The California legislature, local governments, and housing advocates have encouraged the construction of Accessory Dwelling Units (ADU's) on existing parcels to meet the affordable housing crisis which has resulted in rampant homelessness and other social concerns.  Construction of new ADU's will serve several needs.  First, as

with the Debtor here, they can be rented to third parties to provide the additional income needed to make higher mortgage payments, driven by the escalation in housing values and interest rates.  Second, they can be used to provide close and affordable housing for aging parents or financially challenged adult children, all integral to the family unit meant to be protected by preservation of the homestead. And third, they will add to the inventory of affordable housing to meet the homeless crisis.  Construction of ADU's will add to the value of the property now protected by the homestead exemption.  If that added value cannot be protected by the homestead exemption, then the resulting risk to homeowners of loss of their homes to a judicial enforcement sale or bankruptcy will be a disincentive for construction of those units.  That outcome is inconsistent with the legislative intent behind the creation of homestead exemptions in the first place, exemptions which are to be liberally construed in favor of the debtors.

**V.  ARGUMENT**

**A.  The Homestead Exemption Protects the Residence as Well as the Land Upon Which it is Situated, Even if There are Other Uses Incidental to the Homestead**

California statutes provide precise definitions of a dwelling and a

homestead:

> CCP § 704.710(a)(1): "'Dwelling' means a place where a
> person resides and may include but is not limited to the following: (1) a
> house together with the outbuildings and the land upon which they are
> situated…"

> CCP § 704.710(c): "'Homestead' means the principal dwelling (1) in which
> the judgment debtor or the judgment debtor's spouse resided on the date
> the judgment creditor's lien attached to the dwelling, and (2) in which the
> judgment debtor or the judgment debtor's spouse resided continuously
> thereafter until the date of the court determination that the dwelling is a
> homestead."

A bankruptcy is a forced sale (*In re Kelley*, supra) and the bankruptcy trustee
is the hypothetical lien creditor so "the date the judgment creditor's lien attached"
is the petition date. *In re Diaz,* 547 B.R. at 334. The Debtor's home at 1922
Bunker Avenue meets the definition of dwelling. The Debtor resided there on the
petition date and continues to live there. Therefore, her home and the land upon
which it is situated, which is the unsubdivided lot, is her homestead. The entire
parcel meets the statutory definition of a homestead. The inquiry should stop
there, in favor of the debtor. But Creditor spun an argument which the bankruptcy

court accepted, so a thorough analysis of the applicable case law follows.

California cases have long-recognized that an incidental use of the family homestead for purposes other than the residence of the family unit does not defeat homestead protection of the entire parcel of land. In order to sever 1924 Bunker Avenue from the Debtor's homestead, the Creditor and the bankruptcy court relied on selected California cases, in all of which the land was already legally divided into separate lots[5] or the case were decided in the era where no laws prohibited lot splits or division of a parcel into two legal lots. In those times, a court order could divide the property into separate lots without violating California statutes. That era ended with enactment of provisions of the Subdivision Map Act in 1972. Cal. Govt. Code § 64100, et seq.[6] However, not only are the property division laws now different, but the bankruptcy court, in severing the homestead exemption's protection, did not purport to divide the property into separate legal lots.

---

[5] See, for example, *In re Ligget*, 117 Cal. 352 (1867), where there were six different lots and the court ruled that one of the lots, No. 1, was not part of the homestead because it was not used in connection therewith, and *Gregg v Bostwick*, 33 Cal. 220 (1867), where there were at least four separate lots upon which the property owner claimed a homestead, but the court determined that only two separate lots were incidental to the residential use.

[6] "Up until Feb. 1, 1972, anyone wishing to divide a property into four or fewer parcels could simply deed that portion to the buyer. As soon as a new deed was recorded, that portion forever became a separate legal lot of record. It could be used or developed the same as any other lot with similar zoning. A person could create up to four parcels in this manner; assuming they complied with the minimum lot size requirements as they were conveyed.
In 1972, however, this situation changed with adoption of the State Map Act, which went into effect on February 1, 1972, and from that date forward the only way to create new lots was through approval of a subdivision map. While many lots divided by deed prior to that time were (and are) recognized as legal lots, properties could no longer be divided by deed. Properties, anyone wishing to split a lot or sell off a portion of property, would then be required to go through a formal subdivision process or boundary adjustment process." (County of San Diego Zoning Notice PDS-358 revised 3/8/2022 accessed on 9/21/2023 at
https://www.sandiegocounty.gov/content/dam/sdc/pds/zoning/formfields/PDS-PLN-358.pdf )

Therefore, the bankruptcy court's ruling did not follow either line of cases.

The single BAP case the bankruptcy court cited to establish that "old law was still good law," *In re Bond*, 2006 WL 6810941 (9th Cir. BAP 2006), was more of the same and totally inapplicable. In that case the debtor was attempting to use his homestead exemption to avoid a judicial lien on a separate lot which was noncontiguous to his residence. Critical to the BAP ruling that the homestead did not extend to the additional lot was that the noncontiguous lot had its own parcel number and was separated from the homestead by an alley. *Id.* at * 1. In addition, the BAP recognized "[t]here is no legal limitation on the amount of land or the number of lots than can be declared as homestead, the only test is whether the property is actually used as the family residence and whether the surrounding property claimed is *necessary or convenient* for the enjoyment of the family home.: *Id* at *5. (emphasis added). Where, as here, the income from the rental is necessary for the Debtor to make the mortgage payment on her residence, that rental home is certainly "necessary and convenient" to her enjoyment of her home.

The majority of California cases which have addressed the extent of a homestead, when a portion of the land in question is used for purposes other than the residence of the debtor, have focused on whether that purpose is incidental to the family's enjoyment of the homestead. In *In re Jarrell*, 34 F. 2d 970 (S.D. Cal.

1929), the district court affirmed a bankruptcy referee's order which allowed the homestead exemption to extend to a smaller, separate house which was used for rental purposes. In *Jarrell* the pertinent lot could not be divided and the bankruptcy referee explicitly allowed the exemption for the entire lot in question: "The only tests of homestead rights in property are use and value, and, where the main buildings upon city lots are used for a residence, it is immaterial as to how many smaller buildings used for rental purposes are on the same property…." *Id.* at 972. The district court put primary weight on whether "the property [can] be divided in such a way as to retain to the bankrupt a homestead." *Id* at 974. When the district court determined it could not be so divided, the entire lot was subject to the homestead, including the separate rental units.

The California Court of Appeal in *In re Schmelz Estate*, 259 Cal. App. 2d 440 (1968) addressed facts strikingly similar to those before the bankruptcy court and ruled that a probate homestead covered an entire indivisible lot. In *Schmelz*, the property in question consisted of eight units on a single lot, comprised of two houses in the front and a six-unit apartment building in the rear in which the surviving widow lived. The trial court, in granting the widow's petition for homestead, determined that the "property was incapable of physical partition and impressed the whole property with the homestead burden." *Id.* at 444. The Court

of Appeal affirmed because "there was but the one piece of separate property in the instant estate" to support the homestead. *Id.* The parties had stipulated the property was indivisible; this stipulation caused the Court of Appeal to disregard the fact there were separate houses in which the petitioner did not reside. That is exactly the circumstance of the instant case, where the indivisibility is a matter of law rather than party stipulation. This California precedent is controlling and can be distinguished from Creditor's authority, which relied on the existence of separate legal parcels.

The mere incidental use of a premise for a business or income purpose does not defeat a homestead exemption. In *In re Shepardson*, 28 F. 2d 353 (S.D. Cal. 1928), the debtor filed a declaration of homestead on property consisting of 10 acres of land which had been acquired as one plot by deed. The land had a place of residence for the debtor and her family as well as a country store, gas station and nine small cabins often rented to travelers. When the debtor filed a bankruptcy proceeding, the referee ruled that the declared homestead applied to the entire plot. The district court affirmed, first recognizing that the California Supreme Court had held that the homestead exemption statue must be liberally construed in order to provide the protection for which it was intended. *Warner v. Warner*, 144 Cal. 615 (1904); *McKay v. Gesford*, 163 Cal. 243, 248 (1912). After reviewing applicable

California authorities, the court then held that where the premises are the bona fide home of the parties, a business that is conducted to enable the parties to maintain that home is merely incidental to the primary purpose. The portion of the property upon which the business is situated is also imposed with the homestead protection. The facts in *Shepardson* are on point with the Debtor's facts. Since the rental income is imperative for her to maintain her home – as was the store and rental income in *Shepardson* – her homestead exemption protects the entire property.

In *Bodden v. Community Nat'l Bank*, 271 Cal. App. 2d 432 (1969), the California Court of Appeals declared that a declaration of homestead covered an entire parcel. In that case, when the property owner acquired the subject property, it consisted of a single residence. Then she and her husband built a second house in front of the original one where they lived, renting the rear home. When the lender challenged the impact of a declared homestead on the entire parcel, the appellate court rejected its assertion that the rental house was not a necessary part of the homestead. *Id.* at 435. The property owner used the rent from the rear house to pay the mortgage, impressed on the entire parcel when the second house was built. The court found that home critical to maintenance of the homestead: "To hold the homestead invalid as to the rear house and back portion of the lot would deprive respondent of this means of preserving the homestead." *Id.*

There are a multitude of cases where California and federal courts have imposed the homestead exemption on an entire parcel of land where there were multiple uses of the same physical building, one of which was used as the family residence. See, for example, *Nelson v. King (In re Nelson's Estate),* 224 Cal App.2d 138 (1964) (a thirty unit apartment building was entirely protected by a probate homestead when the widow occupied a single unit); *Rosenblum v. Levy (In re Levy),* 141 Cal. 646 (1904) (homestead imposed on entire parcel which consisted of a three-story building subdivided into three flats, one floor each, one of which the owners occupied); *Phelps v. Loop*, 64 Cal. App. 2d 332 (1944) and *Oppenheim v. Goodley*, 148 Cal App. 2d 325 (1957) (both cases allowed the homestead on duplexes, a ruling consistent with all others pertaining to duplexes.)

These cases show there is ample authority allowing a homestead to be imposed on a single parcel with multiple buildings, some of which are used for rental or business purposes. They also demonstrate that the liberal construction of the homestead exemption is satisfied when income from a second home on that same parcel is necessary for the debtor to maintain the primary residence. Only where the lots are legally subdivided have California courts also severed the impact of the homestead exemption. This lot is not legally divisible. The bankruptcy court made no attempt to divide the parcel, nor could it have done so.

California cases have allowed the homestead exemption to apply to twenty-nine rental units in an apartment building where the debtor lived in number thirty; to three stories of flats where the debtor resided on the ground floor; and today – regularly – to a duplex where the homeowner has always rented the second unit. The bankruptcy court's ruling creates an arbitrary distinction for the Property – just because there are a few feet of open land between the Debtor's home and the rental unit – when all these other cases impose the exemption on the entire parcel of land, even though separate income-producing dwelling units exist. There is neither authority nor practical reason for this artificial limitation.

**B. Because No Fair Market Value of the Separate Units Can be Established, The Bankruptcy Court's Ruling Defies California Enforcement of Judgment Law Which Recognizes the Homestead Exemption and Creates a Practical Dilemma in Bankruptcy Cases**

The California Homestead Exemption is found in the Code of Civil Procedure, Title 9. Enforcement of Judgments, Division 2 Enforcement of Money Judgments, Chapter 4 Exemptions. Article 4. Homestead Exemptions.[7] Found at CCP §§ 704.710 et seq., the statute defines the homestead exemption (§ 704.710), establishes the extent of the homestead and how it is allocated and applied (§

---

[7] For the BAP's convenience, the Appendix to this brief has the Table of Contents for Title 9 included so that the organization of the statutory provisions is clear.

704.720), and sets the amount (§ 704.730). It then sets forth how the homestead

exemption comes into play when a judgment creditor wants to enforce a judgment

against a dwelling:

> § 704.740 (a): Except as provided in subdivision (b) [inapplicable here], the
>
> interest of a natural person in a dwelling may not be sold under this division
>
> to enforce a money judgment except pursuant to a court order for sale
>
> obtained under this article and the dwelling exemption shall be determined
>
> under this article.

CCP §§ 704.750-704.780 then establishes the procedure under which the court

determines the exemption and orders a sale.  To make this determination and

decide whether to allow such a sale, the court must comply with § 704.780, which

in pertinent part provides:

> (b)  The court shall determine whether the dwelling is exempt. If the court
>
> determines that the dwelling is exempt, the court shall determine the amount
>
> of the homestead exemption and the *fair market value* of the dwelling. The
>
> court shall make an order for sale of the dwelling subject to the homestead
>
> exemption, unless the court determines that the sale of the dwelling would
>
> not be likely to produce a bid sufficient to satisfy any part of the amount due
>
> on the judgment pursuant to Section 704.800…. If the court determines that

the dwelling is not exempt, the court shall make an order for sale of the

property in the manner provided in Article 6 (commencing with Section

701.510) of Chapter 3.

(emphasis added).

In order for a dwelling house which is subject to the California homestead

exemption to be sold under these provisions, the court must be able to establish the

fair market value of the relevant property.  Per the bankruptcy court and the

Creditor's Objection, a value can be established.  Under the definition of fair

market value, that is impossible to do.  Fair market value in California is defined in

CCP § 1263.320: "(a) the fair market value of the property taken is the highest

price on the date of valuation that would be agreed to by a seller being willing to

sell…and a buyer, being ready, willing, and able to buy…."  7 Miller & Starr

California Real Estate § 24:22. The typical appraisal definition of market value

established by the Appraisal Institute is the most probable price that a property

would sell for on the open market.  The Appraisal of Real Estate, 12th Ed. (2001),

Chapter 2.  These definitions, therefore, require a willing buyer and a willing seller.

There can be neither for a sale of part of an indivisible lot.

Although Creditor acknowledges that the two houses which are subject to

Debtor's homestead exemption are on a single, indivisible lot, he has argued in his

Objection that it is proper to provide separate valuations of each house. Then he submits that the homestead exemption should be limited to the house in which the Debtor resides, not attached to the entire indivisible lot. In addition, he posits that if he prevails on his objection, there are appropriate legal remedies which would allow him to capture the available equity in the rental home by executing on the entire property. (EOR at pp. 284-286). Both of these assertions are flawed in light of the relevant facts.

Creditor supports his arguments by providing two separate appraisals, one of 1922 Bunker Avenue (the "1922 appraisal") (EOR at p. 319) and the other of 1924 Bunker Avenue (the "1924 appraisal"). (EOR at p. 336). The 1922 appraisal is a typical owner/occupied comparable sale and cost approach appraisal. The 1924 appraisal is on the Small Residential Income Property Appraisal Report form, but it is not an income approach appraisal because it uses the rents only to locate comparable sales. It also uses comparable sales and cost approaches. But neither of these appraisals represents fair market value of the homes.

Creditor's appraiser Keven J. Howell himself defines market value in the 1922 appraisal as "market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale." (EOR at p. 327). In the 1924 appraisal, Mr. Howell makes the

extraordinary assumption "[t]he appraiser is using a hypothetical condition that the property is a duplex per client request." This assumption implies that the "duplex" could be sold separately. (EOR at p. 343).

The flaw in these valuations is these two houses cannot be sold separately. They are both situated on the same indivisible lot and the lot can only be sold as a whole. Therefore, there can be no willing seller and buyer for 1922 Bunker; nor can there be the "requisite fair sale." There can be no sale of 1922 Bunker by itself at all, so the purported valuation of the property cannot meet either the statutory nor appraisal definition of market value. Similarly, 1924 Bunker, on the same lot as 1922, cannot be sold as a single "duplex," the extraordinary hypothetical assumption the appraiser was forced to make in order to present a valuation of that unit alone. And it also fails to meet the definitions of fair market value, as no seller can sell and no buyer can buy it without including the entire property.

Exhibit 3 in Creditor's exhibits (EOR at p. 356) is the appraisal prepared for the Debtor for her refinance lender in June 2021. It properly appraises the entire lot, both 1922 Bunker and 1924 Bunker, as a single unit, as the definitions of fair market value require it to do, and concludes that the market value of the lot with both houses in June 2021 was $840,000. This is the only valuation of the property in Creditor's evidence which any court may consider because the lot, with both

houses, can be sold to a willing buyer by a willing seller.

The necessity of determining a fair market value is critical to this appeal because the bankruptcy court relied exclusively on California cases interpreting the scope of the California homestead exemption in reaching its conclusion. A California case could not support the severability of the homestead exemption as the bankruptcy court has done because such decision would be inconsistent with these California statutory provisions regarding fair market value. When that impossibility is coupled with the policy to construe homestead exemptions broadly in favor of debtors, the only logical deduction is this ruling is not supported by California case law. Moreover, the bankruptcy court may not make a ruling which defies the manner established by California statutes to give full effect to the homestead exemption which is provided therein. The bankruptcy court's ruling can only be effective if it could be implemented in a forced judicial sale by the hypothetical lien creditor which a trustee represents. It is impossible for the court to make the appropriate decisions regarding that sale unless the fair market value of the property subject to the homestead can be established. Under the bankruptcy court's order, it cannot be determined.

In Part III of Creditor's objection, he argues that California law provides an adequate remedy for a creditor to "realize the value of non-exempt real property."

He then provides two ways to capture that excess equity: "(i) by division and sale or (ii) sale of the entire APN followed by the apportioning of the exempt and non-exempt sale proceeds." (EOR at pp. 284-86). The undisputed facts here show that 1922-1924 Bunker Avenue are situated on a single, indivisible lot. Therefore, option (i) is impossible, leaving only (ii), sale of the entire APN. Yes, this could occur if the likely execution sale value exceeds the total of the voluntary mortgage and the Debtor's homestead exemption, leaving non-exempt equity. But the homestead would be deducted from the entire APN because the two houses cannot be sold separately at an execution sale. No mechanism exists under California law to carve out part of the APN to be sold and apply the homestead to only that part, then sell the rest for the benefit of creditors.

Creditor has not properly valued the two houses as they cannot be sold separately. An execution sale would sell the entire lot, applying the homestead exemption to the indivisible lot, leaving no equity for creditors. The Creditor's methodologies are flawed, a consideration that the bankruptcy court overlooked.

The inability to determine a fair market value makes a difference in the bankruptcy court as well as under California execution procedures. The bankruptcy court's ruling presupposes that the two independent dwelling units of the single lot can be valued separately. How else would it be able to apportion the

homestead exemption, applying it to part of the land and not to the other part, unless they each have a distinct, separate value?   Creditor's appraiser, by assuming the dwelling units could be sold separately, made artificial valuations which are totally unrealistic with no willing seller or buyer, defying his own definition of value.  As an alternative, Creditor in his pleading suggests arbitrary values based on square footage or percentage of the entire lot occupied by each building. As argued above, those methods will not establish a fair market value for either unit. This ruling creates chaos and uncertainty in this chapter 13 because there is no methodology for the bankruptcy court to calculate the amount of the homestead exemption it purportedly is allowing.  It would create similar problems for chapter 7 trustees, who would be tasked to decide whether there is equity beyond the homestead exemption which should be liquidated to pay creditors without having proper valuations to do so. The ruling serves no practical purpose and in fact introduces a procedural morass to the bankruptcy system. Valuation methodologies not based on fair market value would be ripe for extensive, unproductive litigation at the estate's expense which would rarely benefit anyone other than lawyers.

This unprecedented, novel ruling by the bankruptcy court fails in all respects.

///

**C.  The Bankruptcy Court's Ruling Will Discourage the Construction of Accessory Dwelling Units, Contrary to Current California Policies**

In 2021, effective January 2022, the California Legislature enacted Senate Bill (SB 9) which simplified the process for the construction of ADU's on existing undivided parcels of land.   Codified at Cal. Govt. Code §§ 65852.21 and 66411.7, its purpose was to provide for nondiscretionary, ministerial approval of applications to construct an ADU on property otherwise zoned only for single family residences.  In the appropriate circumstances, it also streamlined the process by which a single lot could be split, to allow for the construction of new ADU's, so that a maximum of four separate residential units might exist on a parcel which before SB 9 would only permit one dwelling house.[8] SB 9 and other recent California legislative enactments are intended to address the current housing crisis by providing more affordable housing.  By making the approval process ministerial, not subject to any discretionary decisions of local agencies or cities, the legislature intended is to encourage current property owners to build ADU's through a quicker and cheaper process.

The Debtor here, with her then-existing husband, constructed the additional duplex on her property in the late 90's.  As the record shows (EOR at p. 271), the

---

[8] A Fact Sheet on SB 9 published by the California Department of Housing and Community Development is included in the Appendix EOR at p. 612.

additional unit was always intended to supplement their income. The need for that income became critical when the Debtor moved onto the property in 2017 (EOR at p. 274) following a contentious divorce[9] and became responsible for paying the single mortgage on the parcel. Without the rental income, she cannot afford her residence.

The Debtor's facts are not unique. The construction of ADU's, encouraged by government and more easily implemented by SB 9, has increased significantly in recent years. Three primary reasons exist for this construction: (1) a homeowner's need for rental income to afford the mortgage payments on the homestead property; (2) a desire of the homeowner to provide nearby, safe, and affordable quarters for aging family members or struggling young adult children; and (3) to address the chronic and escalating need for affordable housing. The bankruptcy court's ruling, if affirmed by the BAP and followed in other courts, will put a huge damper on the willingness of property owners who now have homes protected by the California homestead exemption to build an additional unit that might not be so protected.

The California homestead laws are "designed to protect the sanctity of the family home against a loss caused by a forced sale by creditors..... This strong

---

[9] Which ironically led to the unpaid attorney's fees which make up the claim of Creditor here.

public policy requires courts to adopt a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor." *Amin v Khazindar*, 112 Cal. App. 4th 582, 588 (2003).

The bankruptcy court's ruling flies in the face of this asserted purpose and policy. Moreover, it will put homeowners who wish to construct an ADU on their existing lots for any of the above-stated reasons at risk of losing the protection for their homesteads. An additional unit will always increase the fair market value of the entire parcel. If the bankruptcy court's ruling stands, that increase in value cannot be protected by the exemption and the homeowner will be at risk of losing the entire parcel, including their residence, to a judgment creditor or to a bankruptcy trustee. California cases have not supported this result over the past 150 years. The legislative purpose in enacting SB 9 will be thwarted. Fewer ADU's will be constructed and the housing crisis will continue unabated.

This ruling defies legislative intent, sets poor policy, creates unnecessary risk, and will have a continuing and profound effect on affordable housing in California.

## VI. CONCLUSION

California law is devoid of authority for the bankruptcy court's ruling. Its egregious effect is inconsistent with the intent behind the California homestead

exemption, which is to be liberally construed.  The Debtor respectfully requests the BAP to reverse that ruling and hold that her homestead exemption protects the entire, indivisible parcel.

Dated:  October 9, 2023                               Respectfully Submitted,

                                                                Shioda Langley & Chang, LLP

                                                By:     /s/ Christopher J. Langley
                                                        Christopher J. Langley, Esq.
                                                        Attorney for the Debtor

## <u>CERTIFICATE OF COMPLIANCE</u>

This Opening Brief, exclusive of the certifications, tables of contents and authorities, and the identity of counsel at the end of the brief, is 7,186 words in text and footnotes as counted by Microsoft Word, the word processing system used to prepare this brief. This brief has been prepared in a proportionally-spaced typeface using Times New Roman 14-point font.

I certify under penalty of perjury that the foregoing is true and correct.


Respectfully Submitted,

Shioda Langley & Chang, LLP

By:    */s/ Christopher J. Langley*
    Christopher J. Langley, Esq.
    Attorney for the Debtor

# CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Appellate Panel of the Ninth Circuit by using the appellate CM/ECF system on October 9, 2023

Respectfully Submitted,

Shioda Langley & Chang, LLP

By:  */s/ Christopher J. Langley*
Christopher J. Langley, Esq.
Attorney for the Debtor

## **CERTIFICATION OF INTERESTED PARTIES**

The undersigned certifies that the following parties may have an interest in the outcome of this appeal. These representations are made to enable judges of the Panel to evaluate possible disqualification or recusal:

- PETER URQUIJO, Appellee

Respectfully Submitted,

Shioda Langley & Chang, LLP

By:    /s/ Christopher J. Langley
        Christopher J. Langley, Esq.
        Attorney for the Debtor

## <u>CERTIFICATE OF RELATED CASES</u>

The undersigned certifies that the following are known related cases and appeals:

- NONE.

Respectfully Submitted,

Shioda Langley & Chang, LLP

By:    *_/s/ Christopher J. Langley_*
Christopher J. Langley, Esq.
Attorney for the Debtor