No. 23-1120

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE NINTH CIRCUIT

_____

In Re MARIA TERESA MELENDEZ REY,
*Debtor,*

_____

MARIA TERESA MELENDEZ REY
*Appellant,*
v.
PETER URQUIJO
*Appellee.*

_____

Appeal from the United States Bankruptcy Court
for the Central District of California
Case No. 2:22-bk-14119-WB
Honorable Julia W. Brand, Presiding

_____

**APPELLEE PETER URQUIJO'S
RESPONSIVE BRIEF**

_____

Thomas H. Casey – Bar No. 138264
Michael D. Good – Bar No. 176033
LAW OFFICE OF THOMAS H. CASEY
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone: (949) 766-8787
Facsimile: (949) 766-9896
Email: TomCasey@tomcaseylaw.com
mgood@southbaylawfirm.com
Counsel for Appellee Peter Urquijo

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF ISSUES ON APPEAL .................................................3

STANDARD OF REVIEW ......................................................................3

STATEMENT OF THE CASE...................................................................4

    I.    Ms. Rey's Bankruptcy Filing. ..............................................4

    II.    Mr. Urquijo's Objection To Ms. Rey's Claimed Homestead
        Exemption. .................................................................5

    III.    Mr. Urquijo's Undisputed Evidence In Support Of His Homestead
        Objection Supports The Bankruptcy Court's Findings Of Fact
        Which Should Be Affirmed For Lack Of Clear Error...........................5

    IV.    The Bankruptcy Court's Ruling. ..........................................6

ARGUMENT ......................................................................................8

    I.    Ms. Rey Had The Burden Of Proof On Her Homestead Exemption
        Claim And She Failed To Meet Her Burden Of Proof. ......................8

    II.    By Her Brief, Ms. Rey Ignores The Plain Language Of The
        California Homestead Exemption Statute And Attempts To
        Rewrite It................................................................8

    III.    California's *Homestead* Provisions Are Not Modified By The
        California Government Code's *Land Use* Provisions...........................9

        A.    Confusing Property *Exemption* With Property *Division*, Ms.
            Rey Fails To Address Decisions Specifically Mentioned By
            The Bankruptcy Court...............................................10

        B.    Ms. Rey's Legal Argument That California's Homestead
            Exemption Statute Is Subject To The Subdivision Map Act
            Fails ...................................................................12

IV. The Applicable Legal Authorities Provide That California's Homestead Protection Extends To Ms. Rey's *Residential Equity* And Not To Her 1922 Bunker Avenue *Residence* As Argued By Ms. Rey). ..................................................................14

V. The Phrase "Together With The Outbuildings And The Land Upon Which They Are Situated" Refers To The Outbuildings And Land *Physically Used As The Claimant's Residence.* ..................17

VI. In Determining A Homestead, The California Supreme Court And California Appellate Courts Have Consistently Distinguished Between A *"Mixed Use" Structure* And *"Multi-Residential" Land.* ..............................................21

    A. When Evaluating A Single, "Mixed-Use" Structure (i.e., In Which The Claimant Actually Lives, But Which May Be Additionally Used For Non-Residential Purposes), The Court Must Weigh The *Predominance Of Each Use.* ...............22

    B. When Evaluating *Multi-Residential Land* (i.e., Land Upon Which *Two Or More Separate Residences* Are Situated), The Court Should Recognize The Distinction: The Homestead *"Does Not . . . Include Such Other Land As Has Resting Thereon . . . A Building Or Buildings Devoted To Other Purposes Than Those Of A Family Home."* ........................................................23

VII. Ms. Rey's "Controlling Case" (*In re Schmelz's Estate*), And The Authority Upon Which It Relies, Fully Supports The Bankruptcy Court's Ruling. ..................................................26

VIII. The BAP Should Affirm The Bankruptcy Court's Ruling Because The Remaining "Mixed Use" Cases On Which Ms. Rey Relies Are Factually Distinguishable From The Facts Reviewed By The Bankruptcy Court – And Are Consistent With California Courts' Distinction Between "Mixed Use" Structures And "Multi-Residential" Property..............................................28

IX. Ms. Rey's Speculative Policy Arguments Are Legally And Factually Misconceived....................................................36

    A. The Bankruptcy Court's Refusal To Exempt Ms. Rey's 1924 Bunker Avenue Duplex Does Not Create "Chaos" In The Bankruptcy Courts. ..................................................37

B.    The Bankruptcy Court's Refusal To Exempt Ms. Rey's 1924 Bunker Avenue Duplex Does Not Exacerbate California's Housing Crisis................................................................39

CONCLUSION ........................................................................41

iii

Page(s)

**CASES**

*In re Bond*,
2006 WL 6810941, at *3, *4, *5, *6
(B.A.P. 9th Cir. Apr. 26, 2006)......................................4, 9, 10, 11, 12, 13, 14, 19, 28

*Casserino v. Casserino (In re Casserino)*,
290 B.R. 735, 737 (9th Cir. BAP 2003)......................................................................4

*Peklar v. Ikerd (In re Peklar)*,
260 F.3d 1035, 1037 (9th Cir. 2001)..........................................................................4

*Davis v. Davis (In re Davis)*,
323 B.R. 732, 734 (9th Cir. BAP 2005)......................................................................4

*Wagner v. Ulrich*,
204 Cal. 452, 453, 268 P. 629 (1928) ...........................................................7, 10, 25

*Gregg v. Bostwick*,
33 Cal. 220, 226, 228-29 (1867)................................7, 10, 11, 17, 18, 19, 25, 26, 28

*Guernsey v. Douglas*,
171 Cal. 329, 330, 331, 153 P. 227, 228 (1915) ...............................7, 10, 11, 19, 25

*Lorenz v. Hunt*,
91 Cal.App. 78, 81, 266 P. 617 (1928)....................................................7, 10, 11, 25

*Estate of Schmelz*,
259 Cal.App.2d 440 (1968) ....................................... 2, 7, 10, 23, 25, 26, 28

*Consol.Rail Corp. v. Metro-North Commuter R.R.*,
638 F. Supp. 350, 356 (Sp. Rail Reorg. Ct. 1986) ....................................................10

*In re Ligget*,
117 Cal. 352, 352-53, 354, 49 P. 211, 211-12 (1897) ..................................10, 21, 24

*Maloney v. Hefer*,
75 Cal. 422, 422-23 17 P. 539 (1888) ..................................11, 13, 18, 21, 24, 27, 28

*Conservation Nw. v. Sherman*,
715 F.3d 1181, 1188 (9th Cir. 2013) ........................................................15

*In re Hyman*,
123 B.R. 342, 345–48 (9th Cir.BAP 1991)................................16, 37, 38

*Payne v. Cummings*,
146 Cal. 426, 80 P. 620 (1905)................................................................16

*Ortale v. Mulhern*,
58 Cal.App.3d 861, 864, 130 Cal.Rptr. 277 (1976)................................16

*Thorsby v. Babcock*,
36 Cal.2d 202, 205, 222 P.2d 863 (1950) ..............................................16

*Tarlesson v. Broadway Foreclosure Invs., LLC*,
184 Cal. App. 4th 931, 936, 109 Cal. Rptr. 3d 319, 322 (2010)............16

*Wells Fargo Financial Leasing, Inc. v. D & M Cabinets (2009)*
177 Cal.App.4th 59, 68, 99 Cal.Rptr.3d 97.............................................16

*Ackley v. Chamberlain*,
16 Cal. 182 ...............................................................................................18

*Mann v. Rogers*,
35 Cal. 319 ...............................................................................................18

*Bodden v. Cmty. Nat. Bank of Kern Cnty.*,
271 Cal. App. 2d 432, 434,
76 Cal. Rptr. 278, 280 (Ct. App. 1969)..................... 18, 19, 32, 33, 34, 35

*In re Jarrell*,
34 F.2d 970, 973 (S.D. Cal. 1929) ..............................................19, 31, 32

*In re Shepardson*,
28 F.2d 353, 354 (S.D. Cal. 1928) ..............................................19, 29, 30

*Tiernan v. His Creditors*,
62 Cal. 286 ......................................................................................21, 24

v

*Lubbock v. McMann*,
82 Cal. 226, 22 P. 1145, 229, 22 P. 1147.............................................................21, 24

*In re Allen*,
78 Cal. 293, 294, 20 P. 679).................................................................................21, 24

*In re Est. of Noah*,
73 Cal. 590, 592, 15 P. 290 (1887) .............................................................................22

*In re Moskowitz Est.*,
247 Cal. App. 2d 499, 501–02, 55 Cal. Rptr. 572, 573 (Ct. App. 1966) .................22

*In re White*,
377 B.R. 633, 643 (Bankr. D. Ariz. 2007),
aff'd, 389 B.R. 693 (B.A.P. 9th Cir. 2008) ................................................................28

*Phelps v. Loop*,
64 Cal.App.2d 332, 334, 148 P.2d 674, 676 .............................................................35

*Wolfe v. Lipsy*,
163 Cal. App. 3d 633, 640–41, 209 Cal. Rptr. 801, 806 (Ct. App. 1985) ...............35

*Droeger v. Friedman, Sloan & Ross*,
54 Cal. 3d 26, 812 P.2d 931 (1991).........................................................................35

*Vincenzini v. Fiorentini*,
2 Cal. App. 2d 739, 741, 38 P.2d 876, 877 (1934)....................................................40


**STATUTORY AUTHORITY**

11 U.S.C. §704(1) .......................................................................................................37

11 U.S.C. §704 ............................................................................................................38


**OTHER AUTHORITIES**

Subdivision Map Act, Cal. Govt. Code § 66410, et seq. .........................9, 12, 13, 14

Subdivision Map Act, 7 Cal. Real Est. § 20:1 ........................................................13

Cal. Civ. Proc. Code Section 704.710(c) .................................................................10

Cal. Civ. Proc. Code Section 704.730(a) ................................................................15

Cal. Civ. Proc. Code Section 704.720(b) ...........................................................15, 16

Cal. Civ. Proc. Code Section 704.730.....................................................................16

Cal. Civ. Proc. Code Section 704.960.....................................................................16

Civil Code Section 1237 .........................................................................................18

Civil Code Section 1242 ....................................................................................34, 35

Cal. Civ. Proc. Code Section 704.780.....................................................................37

Cal. Civ. Proc. Code Section 704.800.....................................................................37

Cal. Civ. Proc. Code Section 704.800(a) ................................................................37

Fed.R.Bankr.P. 7001(1), (9) ...................................................................................38

MILLER & STARR § 13.10 ..............................................................................11, 19

Miller and Starr California Real Estate 4th ed.........................................................13

**INTRODUCTION**

Ms. Rey's Brief fails to address the undisputed evidence admitted in the Bankruptcy Court supporting the Bankruptcy Court's factual finding that the detached rental duplex, appurtenant land, and one-half of the parking garage are not necessary for Ms. Rey's use and enjoyment of her home. The Bankruptcy Court's factual finding that the detached rental duplex, appurtenant land, and one-half of the parking garage are not necessary for Ms. Rey's use and enjoyment of her home should be affirmed for lack of plain error. Relying on over 150 years of binding California precedent and an undisputed factual record, the Bankruptcy Court determined that Ms. Rey's homestead included her private residence, her separate yard, and her private half of an enclosed parking structure – but *not* the detached rental duplex (in which she has never lived, and in fact has not even entered since 2020), one half of the parking garage she does not use, and tenants' separate common area, located on a different portion of the same lot.    Ms. Rey appeals, arguing:

- California's homestead exemption protects *any structure* sitting on the same parcel as her residence – *regardless of whether she uses it as such.* As a "back-up argument" she argues for the first time, and improperly, that the payment of her *mortgage* from the duplex's (previously undisclosed) *rental income stream* counts as her residential "use" of the *duplex*.

- The Bankruptcy Court's refusal to classify a separate rental duplex (in which she has never lived) as her residential "homestead" will throw the "bankruptcy system" into "chaos" and, simultaneously, exacerbate California's already-severe housing shortage.

Ms. Rey's appeal suffers from several problems:

- *Ms. Rey ignores the plain language of the California homestead statute and attempts to substitute the homestead statute's use of the word "may" with "must."* According to Ms. Rey, California courts have no discretion to designate a homestead. Ms. Rey attempts to rewrite California's statutory definition of a homestead (i.e., "the principal dwelling where a person resides and [which] *may* include a house together with the outbuildings and the land upon which they are situated") to read:

"the principal dwelling where a person resides and . . . *must* [not *may*] include a house, outbuildings, and the [*undivided*] land upon which they are situated."

- *Ms. Rey confuses California's* <u>homestead</u> *provisions with California's* <u>land use</u> *provisions.* Specifically, she confuses property *exemption* (which requires determination of a "homestead") with the property *division* which attends California's land-use regulatory scheme. She also ignores (or avoids altogether) the Bankruptcy Court's references to clear,

consistent case law authorizing the limitation of a "homestead" to *less than a single parcel of land*.

- *Ms. Rey confuses the protection of a homeowner's <u>residential equity</u> with protection of specified <u>residential property</u>* – and, in a related mistake, confuses the *physical use* of land and outbuildings as a home with their *(purported) economic necessity* to ownership.

This Panel should deny Ms. Rey's appeal and affirm the Bankruptcy Court's Order. As discussed below the Bankruptcy Court's factual findings are not clear error and the Bankruptcy identified and applied the correct, applicable legal authorities.

## STATEMENT OF ISSUES ON APPEAL

Whether Ms. Rey failed to meet her burden of proof that 1924 Bunker Avenue, one-half of the parking garage and the appurtenant land is subject to her homestead exemption?

Whether the Bankruptcy Court erred in ruling that 1924 Bunker Avenue, one half of the parking garage and the appurtenant land is not necessary for Ms. Rey's use and enjoyment of her home located at 1922 Bunker Avenue and therefore is not entitled to her homestead exemption claim?

## STANDARD OF REVIEW

"The scope of a state law exemption involves construction of state law that [this Panel] review[s] de novo . . . . A trial court's findings of fact are reviewed for clear error. . . . Clear error exists when, after examining the evidence, the reviewing

court is left with a definite and firm conviction that a mistake has been committed. . .″[1]

## STATEMENT OF THE CASE

Ms. Rey owns income property in El Monte (Los Angeles County). (ER-270). The property is comprised of two residential structures located at 1922 and 1924 Bunker Avenue.[2]  Ms. Rey resides in a detached, two-bedroom, single family residence at 1922 Bunker Avenue. (ER-270).  She rents both (three-bedroom) units of her separate, detached duplex originally constructed, and always used, as a rental property to two separate tenants at 1924 Bunker Avenue. (ER-270).

## I.    Ms. Rey's Bankruptcy Filing.

Ms. Rey sought Chapter 7 relief on July 29, 2022, primarily to avoid paying her former family law counsel, Mr. Urquijo, whose claim comprises nearly 99% of her unsecured debt. (ER-270). After Mr. Urquijo's investigator discovered her concealment of approximately $1,500 in monthly undisclosed rental income, Ms. Rey "amended" her relevant schedules and converted her Chapter 7 case to one under Chapter 13. (ER-270-271).

---

[1] *In re Bond*, 2006 WL 6810941, at *3 (B.A.P. 9th Cir. Apr. 26, 2006) (citing *Casserino v. Casserino (In re Casserino)*, 290 B.R. 735, 737 (9th Cir. BAP 2003); *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1037 (9th Cir. 2001); *Davis v. Davis (In re Davis)*, 323 B.R. 732, 734 (9th Cir. BAP 2005)).

[2] Respectively, the "1922 Bunker Avenue Residence" and the "1924 Bunker Avenue Duplex."

## II. Mr. Urquijo's Objection To Ms. Rey's Claimed Homestead Exemption.

Ms. Rey claimed a homestead exemption for *both* her 1922 Bunker Avenue Residence *and* her 1924 Bunker Avenue Duplex. (ER-270). Mr. Urquijo objected to Ms. Rey's homestead exemption, only as it pertained to her 1924 Bunker Avenue Duplex and appurtenant real property and one-half of the parking garage.[3]  He presented significant, undisputed evidence (which Ms. Rey has admitted as accurate)[4] that Ms. Rey's 1924 Bunker Avenue Duplex is not necessary for the use and enjoyment of her 1922 Bunker Avenue Residence.

## III. Mr. Urquijo's Undisputed Evidence In Support Of His Homestead Objection Supports the Bankruptcy Court's Findings Of Fact Which Should Be Affirmed For Lack Of Clear Error.

Specifically, Mr. Urquijo's evidence (and Ms. Rey's admissions) established that the 1922 Bunker Avenue Residence consists of a detached, single-family residence where Ms. Rey resides, while the 1924 Bunker Avenue Duplex is a separate structure she rents to two separate tenant. (ER-270). Ms. Rey's 1922 Bunker Avenue Residence and the 1924 Bunker Avenue Duplex are physically separated by a wall (ER-275) and have separate driveways (ER-274; 276), yards (ER-274-275), and common areas. (ER-274).  The 1924 Bunker Avenue Duplex is (and has been)

---

[3] EOR at Exhibit "10," pp.266*ff.*

[4] EOR at Exhibit "13," pp.526 – 527 ("The Debtor Freely Admits She Does Not Occupy, And Has Never Occupied, Her 1924 Bunker Avenue Duplex" . . . "The Debtor Likewise Admits She Does Not Use, And Has Never Used, Her 1924 Bunker Avenue Rental Duplex" and supporting evidence).

continuously rented, and Ms. Rey admitted under oath that she has not even entered the 1924 Bunker Avenue Duplex since 2020. (ER-276).

Ms. Rey maintains her own private front yard (ER-274-275), separate from the duplex, and uses her half of an indoor parking area (physically divided into two, separate two-car parking structures under a common roof) exclusively for storage. (ER-277-278). The tenants do not use any portion of the back and front-yard areas adjoining Ms. Rey's 1922 Bunker Avenue Residence (ER-278) which is encircled by a "privacy wall" (ER-277) nor do they use her separate parking area. (ER-278). Ms. Rey, on the other hand, does not use the 1924 Bunker Avenue Duplex, the tenants' separate parking area, or any of the duplex's surrounding common areas as an appurtenance to her own residence. (ER-274; 277-278).

Ms. Rey presented no evidence in the lower Bankruptcy Court that the 1924 Bunker Avenue Duplex and appurtenant land and one-half of the parking garage are necessary for her use and enjoyment of her home located at 1922 Bunker Avenue. (ER-277-278) (ER-526-527). As Mr. Urquijo's evidence on this issue is undisputed the Bankruptcy Court's factual finding should be affirmed for lack of clear error.

## IV.    The Bankruptcy Court's Ruling.

At a hearing held on April 25, 2023 and continued to May 17, 2023, (ER-560) the Bankruptcy Court ruled that the "homestead" should be limited to her residence

at 1922 Bunker Avenue and one-half of the roofed parking structure immediately adjacent to her privacy wall and accessible through her private entrance. (ER-565).

The Bankruptcy Court made the factual finding that the 1924 Bunker Avenue Duplex, appurtenant land, and the remaining half of the roofed parking structure were not necessary for Ms. Rey's use and enjoyment of Ms. Rey's 1924 Bunker Avenue Residence.[5] Therefore, the 1924 Bunker Avenue Duplex and its appurtenant land were not entitled to the homestead exemption. (ER-566).

The Bankruptcy Court further determined that Ms. Rey's primary argument – that two residential structures situated on a single lot must constitute a single homestead "dwelling" – was inconsistent with binding California precedent.[6] That ruling was based on the Court's review of applicable law.[7] This appeal followed. As discussed below, on a de novo review the BAP should affirm, rule that the Bankruptcy Court identified and applied the correct, applicable law and that the Bankruptcy Court's factual finding was not clear error.

---

[5] EOR at Exhibit "15," p.563, ll.26 – 564, ll.2 (no use and enjoyment); EOR at EOR at Exhibit "19,"p.597, ll.17 – 24 (hearing transcript re: same).

[6] EOR at Exhibit "19," p.597, ll 25 - p.598, ll 6.

[7] EOR at Exhibit "15," p.564 at ll.3 – 3 (citing *Wagner v. Ulrich*, 204 Cal. 452, 453(1928); *Gregg v. Bostwick*, 33 Cal. 220; *Guernsey v. Douglas*, 171 Cal. 329 (1915); *Lorenz v. Hunt*, 91 Cal.App. 78 (1928); *Estate of Schmelz*, 259 Cal.App.2d 440 (1968)).

# ARGUMENT

## I. Ms. Rey Had The Burden of Proof On Her Homestead Exemption Claim And She Failed To Meet Her Burden Of Proof.

The Bankruptcy Court ruled that a party claiming an automatic homestead exemption claim has the burden of proof on the existence of the exemption. "The party claiming the automatic homestead exemption has the burden of proof on the existence of the exemption." (ER-562). Ms. Rey has not contested this conclusion of law by the Bankruptcy Court and the BAP should affirm the Bankruptcy Court's conclusion of law that Ms. Rey had the burden of proof on her homestead exemption claim.

## II. By Her Brief Ms. Rey Ignores The Plain Language Of The California Homestead Exemption Statute And Attempts To Rewrite It.

As discussed above, the plain language of the California homestead statute defines a homestead as "the principal dwelling where a person resides [which] *may* include a house together with the outbuildings and the land upon which they are situated." The homestead statute does not state that the homestead *must* also include the outbuilding and the land upon which they are situated as argued by Ms. Rey. Based on simple statutory interpretation Ms. Rey's legal arguments fail. The Bankruptcy Court applied the correct law and Ms. Rey's flawed interpretation of the plain language of the homestead statute should be denied by the BAP.

## III. California's *Homestead* Provisions Are Not Modified By The California Government Code's *Land Use* Provisions.

Ms. Rey's primary argument is that the phrase "together with the outbuildings and the land upon which they are situated" as it appears in the *Code of Civil Procedure*'s judgment enforcement provisions (modifying the statutory term "dwelling") must be read subject to the *Government Code*'s Subdivision Map Act. According to her:

> The issue before this court . . . turns on, among other things, what "together with the outbuildings and the land upon which they are situated" means when [Ms. Rey]'s homestead parcel is one *undivided* lot which cannot be valued or sold separately but has two separate dwelling units . . . . [T]he cases argued by [Mr. Urquijo] and primarily relied upon by the [B]ankruptcy [C]ourt all dealt with property which was either already divided into separate parcels or was easily divisible by court order, with no need to comply with any subdivision or lot split laws, such as the California Subdivision Map Act, Cal. Govt. Code § 66410, et seq.[8]

Consequently, she believes that this panel's decision in *In re Bond* got it wrong:

> The single BAP case the [B]ankruptcy [C]ourt cited to establish that "old law was still good law," *In re Bond*, 2006 WL 6810941 (9th Cir. BAP 2006), was more of the same [error] and totally inapplicable . . . .[9]

---

[8] Ms. Rey's Appellate Brief ("Appellate Brief") at pp.14 – 15; *see also* p.19 ("[Mr. Urquijo] and the [B]ankruptcy [C]ourt relied on selected California cases, in all of which the land was already legally divided into separate lots or the case were decided in the era where no laws prohibited lot splits or division of a parcel into two legal lots") and n.5.

[9] Appellate Brief at p.20.

This argument is not new: Ms. Rey raised it below in the Bankruptcy Court. As discussed below, the Bankruptcy Court's application of *In re Bond* should be affirmed by the BAP.

### A. Confusing Property *Exemption* With Property *Division*, Ms. Rey Fails To Address Decisions Specifically Mentioned By The Bankruptcy Court.

The Bankruptcy Court addressed Ms. Rey's "divisibility" argument head-on:

> Debtor . . . argues that because the Property is a single lot that is indivisible and cannot be sold piecemeal the entirety constitutes Debtor's "dwelling" under CCP § 704.710(c). This argument is without merit. Courts have long entertained causes and proceedings to determine what portion of the land described in the declaration of homestead is needed for the declarant's convenient use and what portion thereof is "excess land". *Wagner v. Ulrich*, 204 Cal. 452, 453(1928), see *Gregg v. Bostwick*, 33 Cal. 220; *Guernsey v. Douglas*, 171 Cal. 329 (1915); *Lorenz v. Hunt*, 91 Cal.App. 78 (1928); *Estate of Schmelz*, 259 Cal.App.2d 440 (1968). As noted by Judge John Minor Wisdom, the "patina of old cases does not affect their quality." *Consol. Rail Corp. v. Metro–North Commuter R.R.*, 638 F.Supp. 350, 356 (Sp. Ct. RRRA 1986). (ER-564)

Here, Ms. Rey's renewed argument is notable for what it *does not* discuss. Except for *Estate of Schmelz* (discussed at length below), Ms. Rey mentions *none* of these cases – or (in the case of *Gregg v. Bostwick*) mischaracterizes their facts. And with good reason: several upheld partial exemptions in a *single* or *fractional* lot.[10]

---

[10] *See Wagner v. Ulrich*, 204 Cal. 452, 453, 268 P. 629 (1928) (addressing a quiet title action brought with respect to a single lot); *Gregg v. Bostwick*, 33 Cal. 220, 221–22 (1867) (emphasis supplied) (limiting judgment debtor's claimed exemption to a "parallelogram, which was inclosed with a fence, and *separated thereby from the remaining portions of [a single] Lot Three*"); *see also In re Ligget*, 117 Cal. 352, 353, 49 P. 211, 212 (1897) (emphasis supplied) (affirming the trial court's order "setting apart to the [homestead] petitioner all of said property *except that portion of lot 1* which was inclosed with the [rental] dwelling upon

Those decisions involving more than one lot attached no significance to lot lines or to other property subdivisions.[11]   In fact, the Supreme Court addressed a similar argument in *Gregg v. Bostwick*.  There, the debtor argued (as does Ms. Rey) that because the property was comprised of a single block of land, bounded by a single exterior fence, it was all protected by a homestead.  The Supreme Court disagreed:

> How much of Block Eighteen [the judgment debtor's claimed homestead] was actually used by the [judgment] as a homestead at any time prior to 1857 the Court does not find, and it does not follow that they used the entire block for that purpose merely from the fact that they resided upon a part of it, with no fence except upon its exterior lines; for, as we have already stated, the homestead is not measured by fences merely . . . . *Its extent is measured by use and occupation as such, and not by imaginary or artificial lines.*[12]

The same rationale is apparent in the very language Ms. Rey quotes from *In re Bond*:

> **There is <u>no legal limitation on the amount of land</u> or the number of lots that can be declared as homestead, <u>the only test is whether the property is actually used</u> as the family residence and whether the surrounding property claimed is necessary or convenient for the enjoyment of the family home**. MILLER & STARR § 13.10 In other words, there is no formula for determining the propriety of the use of

---

it"); *Maloney v. Hefer*, 75 Cal. 422, 422–23, 17 P. 539, 539 (1888) (emphasis supplied) (upholding trial court's limit of exemption to the rear portion of "*a [single] lot of land claimed as [claimants'] homestead*, having upon it a front and rear house, the former of which was rented to tenants, and the latter occupied by them as a family residence").

[11] *See Guernsey v. Douglas*, 171 Cal. 329, 330, 331, 153 P. 227, 228 (1915) (bankruptcy trustee's action to recover property fraudulently transferred by bankrupt, all of which was immediately "homesteaded" by bankrupt's wife) (quoting *Gregg v. Bostwick*) ("Whatever is used—being either necessary or convenient— as a place of residence for the family as contradistinguished from a place of business, constitutes the homestead, subject to the statutory limit as to value"); *Lorenz v. Hunt*, 91 Cal. App. 78, 81, 266 P. 617 (Cal. Ct. App. 1928) (again quoting *Gregg v. Bostwick*).

[12] *Gregg v. Bostwick*, 33 Cal. 220, 228–29 (1867) (emphasis supplied).

surrounding property claimed, but it cannot be protected by the homestead if is it neither necessary nor convenient for the enjoyment of the home.[13]

*In re Bond* supports Mr. Urquijo's position that the Bankruptcy Court applied the correct legal standard which is whether the property is actually used as the family residence and whether the surrounding property claimed is necessary or convenient for the enjoyment of the family home. After applying the undisputed evidence to this correct, legal standard the Bankruptcy Court properly ruled the 1924 Bunker Avenue Duplex, appurtenant land, and the remaining half of the roofed parking structure were not necessary for the use and enjoyment of Ms. Rey's 1922 Bunker Avenue Residence.

### B. Ms. Rey's Legal Argument That California's Homestead Exemption Statute Is Subject To The Subdivision Map Act Fails.

After failing to address the cited cases in the Bankruptcy Court's Memorandum of Decision, Ms. Rey also fails to offer a single decision suggesting that longstanding California precedent is now subject to the Subdivision Map Act. In fact, a central holding of this Panel's *Bond* decision (issued well after the enactment of the Subdivision Map Act) was that the definition of a California

---

[13] In re Bond, 2006 WL 6810941, at *5 (B.A.P. 9th Cir. Apr. 26, 2006) (emphasis supplied); *see also* Appellate Brief at p.20.

homestead (including the phrase "together with the outbuildings and the land upon which they are situated") has not changed for over 150 years.[14]

The current Subdivision Map Act was recodified into its current form in the Government Code in 1974.  The Map Act's purpose is:

> to regulate and control the design and improvement of subdivisions . . . includ[ing] consideration for the relation of a subdivision to adjoining areas, . . . the installation of streets and the design of street alignments, grades, and widths; the installation of drains, sanitary facilities and their alignments and grades; the location and size of required easements and rights of way for access and utilities for the use of the lot owners and local neighborhood traffic; fireroads and firebreaks; lot size and configuration; and other specific physical requirements in the plan and configuration of the subdivision so as to ensure conformity with the general and specific plans; and to protect the public and purchasers of lots in subdivisions from fraud and exploitation.[15]

By contrast, the "benign object" of California's homestead statute is (and has always been):

> to protect the home of the owner from forced sale, ***and not to withdraw from the reach of creditors property of the debtor as a source of revenue for the support of himself or family***.[16]

---

[14] In re Bond, 2006 WL 6810941, at *4:

> We do not agree with the appellant that the substantive content of the basic definition of a California homestead, insofar as it applies to structures on land owned in fee simple, has materially changed in substance since the Nineteenth Century. While the definition has been restyled and has been expanded to include mobile homes, boats, condominiums, planned developments, stock cooperatives, and community apartment projects where people reside, the basic definition of a traditional residence has remained essentially intact since 1872.

[15] § 20:1. Purposes and overview of the Subdivision Map Act, 7 Cal. Real Est. § 20:1 (Miller and Starr California Real Estate 4th ed.) (citations omitted).

[16] Maloney v. Hefer, 75 Cal. 422, 424–25, 17 P. 539, 540 (1888) (emphasis supplied).

To the extent these differing statutory objectives in any way implicated one another, the California legislature undoubtedly knew how to reconcile them. But in reviewing legislation enacted nearly a decade after the current Subdivision Map Act came into force, this Panel noted:

> The legislative history of the 1982 [homestead] statute confirms that the substance of the law was not being changed:
>
> Subdivision (a) is intended to include all forms of property for which an exemption could be claimed under former law[.]
>
> Id. Legislative Committee Comment—Senate 1982 Addition.
>
> It follows from this history that the pertinent portion of the definition of a California homestead has not materially changed . . . .[17]
>
> Put another way, Ms. Rey's legal argument fails because the Subdivision Map

Act (which serves different purposes than the homestead exemption statute) has no bearing on – and has not changed – California's longstanding definition of a "homestead."

## IV. The Applicable Legal Authorities Provide That California's Homestead Protection Extends To Ms. Rey's *Residential Equity* And Not To Her 1922 Bunker Avenue *Residence* As Argued By Ms. Rey.

Ms. Rey's secondary argument in her Brief does not comport with the applicable legal authorities when she argues:

> The Homestead Exemption Protects the *Residence* as Well as the Land Upon Which it is Situated . . . .[18] Where . . . the income from [Ms. Rey's] rental is necessary for [her] to make the *mortgage payment on her*

---

[17] In re Bond, 2006 WL 6810941, at *5.
[18] Appellate Brief at p.17.

14

*residence*, that rental home is . . . 'necessary and convenient' to [the use and] enjoyment of her home.[19]

This argument – which relies on alleged (and unfounded) "evidence" *never* raised in the Bankruptcy Court[20] – is improper,[21] and should be deemed waived for purposes of this appeal.

Moreover, it is wrong. California's exemption statute affords the debtor a right to retain a *certain sum of money* when the court orders the sale of a homestead to enforce a money judgment and not the right to retain the property itself. As explained repeatedly by the Ninth Circuit:

> California does not permit a debtor to exempt his entire interest in a homestead, but specifically limits the dollar amount up to which a homestead exemption can be claimed. Cal.Civ.Proc.Code § 704.730(a). The language of the relevant statutes makes it clear that the "homestead exemption" in California is merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a money judgment; it is not an absolute right to retain the homestead itself. *See, e.g.*, Cal.Civ.Proc.Code § 704.720(b), which states, "If a homestead is sold under this division ... the *proceeds of sale* ... are exempt in the amount of the homestead exemption provided in

---

[19] *Id*. at p.20.

[20] Ms. Rey claims that "[t]he evidence in the record shows that the Debtor relies on the rental income to make her mortgage payments and may not be able to afford her house without it." Appellate Brief at p.20. But her brief points to no such evidence. Indeed, the *only* evidence is that she *concealed* her rental income from the parties and from the Court, until Mr. Urquijo's investigator brought it to light. *See* EOR at Exhibit "10," p.288 (Declaration of Peter Urquijo).

[21] *See Conservation Nw. v. Sherman*, 715 F.3d 1181, 1188 (9th Cir. 2013) (citations omitted) ("We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court." . . . ."This principle accords to the district court the opportunity to reconsider its rulings and correct its errors. . . . This rule also ensures that issues raised for the first time on appeal are not decided where "there may be facts relevant to the issue which were not developed in the record.")

Section 704.730." (Emphasis added). *See In re Hyman*, 123 B.R. 342, 345–48 (9th Cir.BAP 1991).[22]

. . . .

The "excess value" in a California homestead, the value above encumbrances and the exemption amount, has always been available to creditors. In *Payne v. Cummings*, 146 Cal. 426, 80 P. 620 (1905), for example, the court stated: "The homestead declared upon may embrace an area even greater in value than the five-thousand-dollar homestead exemption allowed.... In such a case the homestead is not void, but proceedings must be had ... for the appraisement and division or sale of the property." 146 Cal. at 429, 80 P. 620.

. . . .

Appellants' error is to confuse the policy of preserving family life and preventing homelessness with protection of a specific residence from creditors. This distinction is underscored by related statutory provisions. Where a forced sale has occurred, the proceeds of the exemption, in this case $45,000, may not be reached by creditors for a period of six months. Cal.Civ.Proc. Code §§ 704.720(b), 704.960. This permits the debtor time to settle into a substitute dwelling. *See Ortale v. Mulhern*, 58 Cal.App.3d 861, 864, 130 Cal.Rptr. 277 (1976); *Thorsby v. Babcock*, 36 Cal.2d 202, 205, 222 P.2d 863 (1950).[23]

Under California law, therefore, Ms. Rey has a right to specified *sale proceeds* – but not to a specific *piece of property*. Ms. Rey's proclaimed right to the property itself fails as a matter of law. Further, Ms. Rey's argument that her originally undisclosed rental income is purportedly "necessary" for the mortgage payments

---

[22] *In re Reed*, 940 F.2d 1317, 1321 (9th Cir. 1991) (emphasis in original).

[23] *In re Hyman*, 123 B.R. 342, 346 (B.A.P. 9th Cir. 1991), *aff'd.*, 967 F.2d 1316 (9th Cir. 1992). *See also Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931, 936, 109 Cal. Rptr. 3d 319, 322 (2010) (quoting *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 68, 99 Cal.Rptr.3d 97) ("A homestead exemption does not preclude sale of the [judgment debtor's] home but entitles the [judgment debtor] to receive the value of the exemption if the property is sold to satisfy a judgment lien.").

required to retain possession of that property (1922 Bunker Avenue) is not the sort of "use and enjoyment" contemplated by California courts in defining a "homestead." Instead, as discussed below, the "use and enjoyment" contemplated by all the "homestead" cases (including all the cases cited by Ms. Rey) is the *physical use of land and outbuildings* as a home – and not their *economic necessity to ownership*.

## V. The Phrase "Together With The Outbuildings And The Land Upon Which They Are Situated" Refers To The Outbuildings And Land *Physically Used As The Claimant's Residence.*

The phrase "together with the outbuildings and the land upon which they are situated" as employed in California's homestead statute refers specifically to the outbuildings and land that are *physically used as the claimant's residence.* The California Supreme Court has repeatedly recognized that to qualify as part of a claimed "homestead," land and outbuildings must be *actually, physically used* as an integral part of the family's home:

> Whatever is ***used*** -- being either necessary or convenient -- ***as a place of residence*** for the family as contradistinguished from a place of business, constitutes the homestead, subject to the statutory limit as to value. . . . ***The homestead for which the statute provides is not one in name merely, but <u>one in fact</u>. It must be <u>resided upon and used as such</u> at the time the declaration is made*** . . . .[24]
>
> . . . .

_____

[24] *Gregg v. Bostwick*, 33 Cal. 220, 228 (1867) (emphasis supplied).

The premises to be described in the declaration [of homestead] are such and only such as the parties are <u>residing upon and using</u> as a homestead at the time their declaration is made. If more is included, it will not for that reason become a part of the homestead, and therefore exempt from execution, notwithstanding the whole may be less than five thousand dollars in value.[25]

. . . .

'The homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated.' Civil Code, § 1237. ***It is <u>the principal use to which property is put</u>, and not quantity, which furnishes the test in determining the question whether or not property is subject to dedication as a homestead***. *Ackley v. Chamberlain*, 16 Cal. 182; *Gregg v. Bostwick*, 33 Cal. 220. ***And, if only a part of the land described in the homestead declaration be <u>actually used and appropriated as the home of the family</u>, the remainder not so used and appropriated forms no part of the homestead claim, in the sense of the statute***. Mann v. Rogers, 35 Cal. 319.[26]

California appellate courts have therefore repeatedly and consistently looked to evidence of the *entire property's physical use* – such as the presence or absence of physical barriers,[27] separate and independent street access,[28] use of the property

_____

[25] *Id*. at 229 (emphasis supplied).

[26] *Maloney v. Hefer*, 75 Cal. 422, 424, 17 P. 539, 540 (1888) (emphasis supplied).

[27] *Maloney v. Hefer*, 75 Cal. 422, 425, 17 P. 539, 540 (1888) (limiting exemption) ("[T]he premises in question are separated from the residence in the rear by a tight board fence, and are separate and independent from each other"); *cf. Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d 432, 434, 76 Cal. Rptr. 278, 280 (Ct. App. 1969) (permitting exemption) ("[T]here is no fence or other physical object dividing the front and rear houses unless it would be two spruce trees that grow in the space between them").

[28] *Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d at 435, 76 Cal. Rptr. at 280 ("Perhaps the greatest barrier to a division of the property into front and rear lots is that the occupants of the rear house must cross over the front of the lot to gain access to the street").

for detached parking,[29] domestic water supply,[30] gardening,[31] outdoor restrooms,[32] garbage storage,[33] waste disposal,[34] drying laundry,[35] picnicking[36] and other outdoor living[37] – to determine whether, under the particularized facts of each specific case,[38] the entire property (or a mere portion of it) is "necessary or convenient" for the claimant's *domestic (i.e., non-business) use and enjoyment of a home.*[39]

---

[29] *In re Jarrell*, 34 F.2d 970, 973 (S.D. Cal. 1929) ("The garage [on part of lots 46 and 45] is used by the bankrupt and his family").

[30] *In re Shepardson*, 28 F.2d 353, 354 (S.D. Cal. 1928) ("There was a well, from which domestic water was obtained, located at the side of the small store and filling station building").

[31] *In re Jarrell*, 34 F.2d at 973 ("[T]he west 5 feet of the east 10 feet of lot 45 is used as a garden by the bankrupt").

[32] *In re Shepardson*, 28 F.2d at 354 (S.D. Cal. 1928) ("Toilet facilities were provided at the store building, and were used by the family, as well as others who were upon the ground").

[33] *In re Bond*, 2006 WL 6810941, at *6 (B.A.P. 9th Cir. Apr. 26, 2006); *see also Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d at 434, 76 Cal. Rptr. at 280 ("Respondent's . . . trash and other waste material is carried across the rear lot and stacked at the back of the property").

[34] *In re Shepardson*, 28 F.2d at 354 ("The sewage was disposed of at a distance of about 120 feet from the toilets").

[35] *In re Bond*, 2006 WL 6810941, at *6; *see also Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d at 434, 76 Cal. Rptr. at 280 ("Respondent's clothes line is located partly alongside the rear house on the back part of the lot").

[36] *In re Bond*, 2006 WL 6810941, at *6; *see also Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d at 434, 76 Cal. Rptr. at 280 ("A picnic table located between the two houses is used by both respondent and her tenants").

[37] *In re Jarrell*, 34 F.2d at 973 ("[B]etween the various buildings bankrupt uses the ground for gardens, walks, pagodas").

[38] *Gregg v. Bostwick*, 33 Cal. 220, 228 (1867) ("Whatever lies beyond [the general definition of "homestead"] must find its demonstration in the peculiar facts of the case."); *see also In re Bond*, 2006 WL 6810941, at *5 (citing MILLER & STARR § 13.10) ("there is no formula for determining the propriety of the use of surrounding property claimed, but it cannot be protected by the homestead if is it neither necessary nor convenient for the enjoyment of the home"); 37 Cal. Jur. 3d Homesteads § 33 (2023) ("There is not any formula by which to decide the right of a claimant to a homestead, but each case must be determined by the facts presented").

[39] *Cf. Guernsey v. Douglas*, 171 Cal. 329, 331, 153 P. 227, 228–29 (1915) ("Douglas, who was a painter by trade, and who had for use in his trade painters' tools and a horse, sometimes threw the tools on the other lots, and at times he pastured the horse thereon. He also occasionally cut for horse feed some wild grass growing thereon. *This use, however, was for purposes of his trade rather than in connection with his home*") (emphasis supplied).

Notably, *none* of these decisions (nor any other decision) tie the claimant's "use and enjoyment" of a dwelling to a *non-residential* (i.e., business) purpose. Indeed, as discussed below, binding California precedent requires that in the case of a single, "mixed use" structure (i.e., a single structure physically used as the claimant's residence as well as for non-residential purposes), the *residential use must predominate*; i.e., the non-residential use of the structure must be merely "incidental" to its use as a residence.

Here, Ms. Rey does not (and cannot) argue that she ever physically used her 1924 Bunker Avenue Duplex as a residence. The Bankruptcy Court heard Ms. Rey's factual admissions and other evidence that she (i) was not permitted to enter the 1924 Bunker Avenue Duplex without prior, written notice and, in fact, had not done so since 2020; (ii) does not pay the duplex's utilities or receive her tenants' mail; (iii) maintains her own separate, exclusive front yard and "privacy-walled" backyard living area, "street-side" driveway, and private, direct access to her own two-car parking structure (used for storage); and (iv) uses none of the 1924 Bunker Avenue Duplex's exterior driveway area (its only common area) for parking or for any other purpose. [40]

---

[40] *See* n.11 – 22, *supra*, and accompanying text.

Consequently, the Bankruptcy Court was amply justified in reaching a factual finding that "the 1924 Bunker Avenue [Rental] [D]uplex and appurtenant land and one-half of the garage are not necessary for the use and enjoyment of Debtor's home and are not entitled to the homestead exemption."[41]

## VI. In Determining A Homestead, The California Supreme Court And California Appellate Courts Have Consistently Distinguished Between A *"Mixed Use" Structure* And *"Multi-Residential" Land*.

As discussed by the California Supreme Court in *In re Levy's Estate*[42] following a review of applicable case law:

> *[I]f a building is the actual bona fide residence of a party, he may legally select it and the land on which it is situated as a homestead*, even though, incidentally, a part thereof, no matter how large, may be used by him for other purposes than those of family residence. There is no decision of this court in conflict with this view. *The cases cited above are clearly distinguishable from another line of cases laying down an equally well-settled doctrine, viz.: That the use of the property is an important element to be considered, and that where the building is occupied by the claimant primarily for other purposes than those of residence, the occupancy of a portion thereof by him and his family being for the purpose of conducting a business therein, and but incidental to the business, the property cannot be legally selected as a homestead. . . .*
>
> *Appellants rely . . . on a line of cases where it is held that where two or more buildings suitable for dwelling-house purposes, belonging to the claimant, are situated upon the same parcel of land, and the claimant resides in one, he can legally select but one as a homestead*. (*In re Ligget*, 117 Cal. 352;2 *Tiernan v. His Creditors*, 62 Cal. 286; *Maloney v. Hefer*, 75 Cal. 422;3 *Lubbock v. McMann*, 82 Cal. 226; *In re Allen*, 78 Cal. 293.) <u>*The distinction between these cases and the*</u>

---

[41] EOR at Exhibit "15," p.563, ll.26 – 564, ll.2.

[42] 141 Cal. 646, 650–51, 75 P. 301 (1904) (emphasis supplied) (internal citations omitted).

***<u>case of a single building is obvious</u>. Under the express terms of the statute the homestead "consists of the dwelling-house in which the claimant resides and the land on which the same is situated." <u>While this definition may include not only the land on which the dwelling-house stands, and of which it has become a part, but also such other land as may be necessary to its convenient use and occupation, it does not, when fairly construed with a view to the objects of the homestead law, include such other land as has resting thereon, as a part thereof, a building or buildings devoted to other purposes than those of a family home</u>**.*

Under *Levy*'s guidance:

**A.  When Evaluating A Single, "Mixed-Use" Structure (i.e., In Which The Claimant Actually Lives, But Which May Be Additionally Used For Non-Residential Purposes), The Court Must Weigh The *Predominance Of Each Use*.**

In such cases, courts commonly find that the property's *non-residential* use is "incidental" to its *residential* use as a homestead.  Nevertheless, trial courts have occasionally exercised their discretion to deny a homestead claim[43] or – to legally sever it from the non-residential portion.[44]

---

[43] *See, e.g., In re Est. of Noah*, 73 Cal. 590, 592, 15 P. 290 (1887) (distinguished in *Estate of Levy*) (emphasis supplied) ("The property spoken of in the petition was *dedicated to business purposes*, and the owner could not have converted an undivided portion of it into a homestead by living in some of the rooms and filing a declaration.").

[44] *See, e.g., In re Moskowitz' Est.*, 247 Cal. App. 2d 499, 501–02, 55 Cal. Rptr. 572, 573 (Ct. App. 1966) (internal quotations and citations omitted) (emphasis supplied) (providing a homestead for an 8-year term in a single apartment within a 4-unit building) ("Under the circumstances, it was not an abuse of discretion to set apart a homestead, from decedent's separate property, consisting of an undivided one-fourth interest in the 4-unit apartment building for 8 years. *The court was not required to grant petitioner the exclusive possession of the entire building or of any part thereof*").

**B. When Evaluating *Multi-Residential Land* (i.e., Land Upon Which *Two Or More Separate Residences* Are Situated), The Court Should Recognize The Distinction: The Homestead "*Does Not . . . Include Such Other Land As Has Resting Thereon . . . A Building Or Buildings Devoted To Other Purposes Than Those Of A Family Home.*"[45]**

*Levy*'s approach has been consistently upheld in subsequent cases, such as *In re Schmelz's Estate*,[46] where the California Court of Appeals affirmed a surviving widow's homestead in property containing multiple dwellings.

*Schmelz's Estate* concerned property in South Gate (Los Angeles County) consisting of eight units on one lot (i.e., two houses in the front and a six-unit apartment building in the rear). Eva Schmelz, a widow (who, with her recently deceased husband, Rupert, had occupied one of the apartments), sought to impress a probate homestead on the South Gate property.[47]

The Court of Appeals, analogizing the stipulated physical indivisibility of the Schmelz's property to *Levy's Estate*'s "mixed use" single structure cases, was careful to limit its holding to the parties' expressly stipulated facts. Indeed, it took *four paragraphs* to do so, going so far as to indicate that, without the contesting heirs'

---

[45] *In re Levy's Estate*, 141 Cal. at 651.

[46] 259 Cal. App. 2d 440, 66 Cal. Rptr. 480 (Ct. App. 1968).

[47] *Id*. at p.442.

23

stipulation, the probate court's ruling would have, indeed, been a reversible abuse of discretion[48] – and further observing that:

- "[there is] *no* [California] appellate case in which the issue determined was that a probate homestead was properly impressed upon a piece of property where there are multiple dwellings, each or any of which is complete as a proper residence for homestead purposes;"[49]

- *all* the (probate and non-probate) appellate cases reviewing similar facts had reached the *opposite* conclusion (i.e., that a second dwelling structure and appurtenant land on the homestead claimant's property was *not* entitled to homestead protection) – and were, in fact, "authority that impressment of a homestead on such a property would be an abuse of discretion;"[50]

---

[48] 259 Cal. App. 2d at 444, 66 Cal. Rptr. at 483 (emphasis supplied):

Since there was but the one piece of separate property in the instant estate, and it was of the general type amenable to a homestead (residential), there remained four issues to be determined by the court below upon the petition. The first issue concerned the extent of the property to be set aside for homestead. *While this, generally, is a matter of the trial court's discretion, the appellants urge that here there was an abuse of discretion. In the light of the concessions hereinbefore set forth in footnote 2, we do not agree*.

[49] 259 Cal. App. 2d at 444, 66 Cal. Rptr. at 483:

*We find no appellate case in which the issue determined was that a probate homestead was properly impressed upon a piece of property where there are multiple dwellings, each or any of which is complete as a proper residence for homestead purposes. To the contrary, the case of Maloney v. Hefer, 75 Cal. 422, 17 P. 539, held that where there were two houses on the one lot and each was divisible and separate from the other, only that portion actually the residence of the homesteader was subject to the dedication of the homestead. Lubbock v. McMann, 82 Cal. 226, 22 P. 1145 is authority that impressment of a homestead on such a property would be an abuse of discretion*. There, the court declared (at p. 229, 22 P. at p. 1147): 'If at the time of filing the declaration for record, the two houses now standing upon this lot had been standing as they now do, and occupied as they now are, only the one occupied as the dwelling of the plaintiff, with that portion of the lot used in connection therewith, would have been impressed with the homestead character. As to the other house, and the land used in connection with it, the attempt to dedicate it as a homestead would have been inoperative. (*Tiernan v. His Creditors*, 62 Cal. 286; *Maloney v. Hefer*, 75 Cal. 422, 424, 17 P. 539; *In re Allen*, 78 Cal. 293, 294, 20 P. 679.)' The case of *In re Ligget*, 117 Cal. 352, 49 P. 211 is to the same effect.

[50] *Id*. at pp.444-45.

24

- even *Levy's Estate* (involving a single, "mixed-use" structure) recognized this factual distinction; and[51]

- because California law "appear[ed] to conflict with the homestead as set aside in [Schmelz's estate]," the Court of Appeals' decision should expressly *not* be cited for the very proposition now advanced by Ms. Rey – i.e., that *both* dwelling structures on *her* property are somehow protected by a homestead.[52] Yet, despite the clear admonition by the *Schmelz's Estate* Court that the *Schmelz's Estate* opinion not be cited as legal precedent, Ms. Rey does exactly that.

Put another way, *Schmelz's Estate* is the (singular) exception that proves the rule consistently applied by California courts. Given this consistent line of authority, the Bankruptcy Court was correct to observe that in cases involving multi-residential land (such as Ms. Rey's 1922 Bunker Avenue Residence and 1924 Bunker Avenue Duplex):

> [California] Courts have long entertained causes and proceedings to determine what portion of the land described in the declaration of homestead is needed for the declarant's convenient use and what portion thereof is 'excess land' [to which homestead protection does not apply].[53]

---

[51] *Id.* at p.445 (quoting *Levy's Estate*).

[52] *Id.* at p.446:

> ***The analysis above is in a desire that this case not be cited as authority for that which we do not intend to express. As we have pointed out, the case authority appears to conflict with the homestead as set aside in the case before us. We affirm, however, the discretion exercised by the trial judge for the same reason that he undoubtedly exercised it, and that is, with all of the interested parties before him, they effectively stipulated that the property was not divisible. The parties are bound by their stipulation of fact, and cannot be heard on appeal to negate that which had been agreed upon, and upon which the trial judge rightfully relied.***

[53] EOR at Exhibit "15," p.561 (citing – in addition to *Estate of Schmelz – Wagner v. Ulrich*, 204 Cal. 452, 453(1928); *Gregg v. Bostwick*, 33 Cal. 220; *Guernsey v. Douglas*, 171 Cal. 329 (1915); and *Lorenz v. Hunt*, 91 Cal.App. 78 (1928)).

Notably, and aside from a brief (factually incorrect) mention of *Gregg v. Bostwick*, Ms. Rey addresses *none* of the Bankruptcy Court's cited decisions.

## VII. Ms. Rey's "Controlling Case" (*In re Schmelz's Estate*), And The Authority Upon Which It Relies, Fully Supports The Bankruptcy Court's Ruling.

Ms. Rey relies on *In re Schmelz's Estate* as "controlling authority" in this case.[54]  As discussed above, this decision is indeed highly instructive – but for reasons *directly contrary* to those Ms. Rey suggests.

As discussed above, Ms. Rey has admitted she does not physically use the 1924 Bunker Avenue Duplex and appurtenant land.  Ms. Rey has readily admitted that the 1924 Bunker Avenue Duplex (which has its own separate mailbox, utilities, yard and common area, driveway, and street access) *is not*, and has not been, "necessary and convenient" for her use and enjoyment of her 1922 Bunker Avenue residence.  Ms. Rey instead incorrectly focused on whether the property could be partitioned.  Her counsel expressly acknowledged this on the record on April 25:

> MR. LANGLEY: . . .There is lots of case law that says the use [of the structure] is not important.  The primary purpose is the residence.  This debtor is living in the property.
>
> THE COURT: Where are those cases in your brief?
>
> MR. LANGLEY: We -- if the Court would like additional briefing, we can do that.
>
> THE COURT: They're not in your brief --
>
> MR. LANGLEY: Our opposition was based --

---

[54] Appellate Brief at p.22.

THE COURT: -- though, right?

MR. LANGLEY: No. ***Our opposition was based more on the approach, that there is no way to partition this property*** . . . .[55]

But as discussed above, the applicable legal authorities require an inquiry in to the homestead claimant's *physical use of property* claimed as a residence – not whether the property is "partitionable." Instead, this case is nearly identical, factually, to *Maloney v. Hefer*,[56] in which the California Supreme Court determined that two dwelling houses, located on the same lot, would not support a homestead protecting the debtor's equity in the entire property.

In that case, the California Supreme Court, sitting *en banc*, unanimously affirmed a trial court's limitation of the homestead to the structure, and portion of the property, *physically used* by the judgment debtor as a residence.[57] In so doing, the Supreme Court affirmed a homestead policy objective that Ms. Rey ignores:

---

[55] EOR at p.584 (2023-04-25 Transcript at p.14, ll.12 – p.15, ll. 11) (emphasis supplied).

[56] 75 Cal. 422, 17 P. 539 (1888).

[57] Maloney v. Hefer, 75 Cal. 422, 425, 17 P. 539 (1888) (emphasis supplied):

> As to the premises in dispute, the finding of the [trial] court, which is amply supported by the evidence, is against the appellants. It is as follows:--
>
> "***<u>The plaintiffs have not lived in or occupied said front house or premises</u> for over ten years last past, but have been renting the same to tenants during that time***."
>
> ***The findings then proceed to show that the premises in question are separated from the residence in the rear by a tight board-fence, <u>and are separate and independent from each other</u>, etc***.
>
> Premises thus separated and thus used were not subject to dedication as a homestead by the mere filing of a declaration as provided by the statute . . . the conclusion is . . . inevitable that, as to the front lot, it did not and could not become a homestead, because not used as a home at the time of, or for many years prior to, the declaration by which it was sought to impress it with that character.

*The benign object of the statute was to protect the home of the owner from forced sale, and <u>not to withdraw from the reach of creditors property of the debtor as a source of revenue for the support of himself or family</u>. In view of this paramount object, the justice of the distinction made and the limitation placed upon the right of the homestead claimant is manifest.*

Like *Gregg v. Bostwick* (1867), *Maloney v. Hefer* (1888) – and its underlying policy – remain good law, relied upon by courts within[58] and outside[59] California. As the Supreme Court did many years ago (and as this panel did more recently in *Bond*), this panel should likewise hold that Ms. Rey cannot utilize her residence to withhold from creditors her separate, rental duplex.

**VIII. The BAP Should Affirm the Bankruptcy Court's Ruling Because The Remaining "Mixed Use" Cases On Which Ms. Rey Relies Are Factually Distinguishable From The Facts Reviewed By the Bankruptcy Court – And Are Consistent With California Courts' Distinction Between "Mixed Use" Structures And "Multi-Residential" Property.**

Specifically:

- *In re Shepardson*[60]

*In re Shepardson*, readily distinguishable from Ms. Rey's facts, involved a rural, 10-acre parcel of farmland in Madera County. On one side of a county road intersecting the property, the family's residence sat on a smaller (slightly less than

---

[58] *See*, e.g., *In re Schmelz's Est.*, 259 Cal. App. 2d 440, 444, 66 Cal. Rptr. 480, 483 (Ct. App. 1968) and discussion *supra*.

[59] *In re White*, 377 B.R. 633, 643 (Bankr. D. Ariz. 2007), aff'd, 389 B.R. 693 (B.A.P. 9th Cir. 2008) (denying homestead exemption in debtor's sale proceeds reinvested in stock-trading, and noting that "the 'benign object' of the [homestead] statute is to protect the homeowner 'from a forced sale, and not to withdraw from the reach of creditors property of the debtor as a source of revenue for the support of himself or family.'").

[60] 28 F.2d 353 (S.D. Cal. 1928).

half an acre) portion; on the other side, the remaining larger (approximately 9 1/2 acre) portion, described as "farmland," held a barn. On the same side as the barn (and across the road from the family residence), a small house, nine cabins, and a combination gas station-merchandise store were clustered into approximately two acres.[61]

In reviewing a bankruptcy referee's factual findings, the District Court reviewed an evidentiary record demonstrating that all the structures on the property (including a well and toilets at the store, and a separate part of the same parcel employed for waste disposal) were "used by the family" for "domestic" purposes.[62]

Ms. Rey claims that:

> the [Shephardson] court . . . held that where the premises are the bona fide home of the parties, a business that is conducted to enable the parties to maintain that home is merely incidental to the primary purpose.[63]

But even a cursory reading of *Shepardson* reveals a different holding: i.e., under facts dramatically different from those here (a store and gas station, utilized by the debtor for domestic water supply and as the family restroom, and cabins occasionally patronized by transitory motorists passing through the family farm, all of which comprised a comparatively small portion of the property's 10-acre

---

[61] *Id.* at 354.

[62] *Id.*

[63] Appellate Brief at pp.22-23.

footprint) the bankruptcy referee had wide discretion to find, as a matter of fact, that the use of non-residential structures did not predominate over the bankrupt's *physical "use and enjoyment" of the entire property* as a *family residence*:

> In this case we find that ***the property is <u>naturally rural acreage</u>. There are <u>no large or permanent [non-residential] structures</u> erected upon the larger parcel***. The ***small building*** in which the merchandise store and filing station are located, according to the scale on the map, is about 43 feet long and 16 or 17 feet wide. The ***small house***, on the smaller parcel hereinbefore referred to, is of ***still smaller dimensions that the store building. The patronage afforded in the conduct of the store and filing station, and the use of the small cabins, would depend wholly upon people traveling upon the highway in that remote section. I think it cannot be said, under the facts which the case shows, that the referee was wrong in determining that the business uses to which a part of the land was put were incidental and subordinate to the use of the property as a home for the bankrupt and her family.***[64]

Here, by contrast to *Shepardson*, Ms. Rey's physically separated 1924 Bunker Avenue Duplex has been consistently rented by tenants, occupies approximately one-half of her urban property parcel, and perhaps most importantly, per the Bankruptcy Court's factual findings has *never* been occupied or used by her for *any* residential purpose.

Based on these admitted facts, the Bankruptcy Court exercised the same discretion as did the *Shepardson* bankruptcy referee to find that the 1924 Bunker Avenue Duplex was, in fact, *not* necessary to the use and enjoyment of Ms. Rey's

---

[64] *In re Shepardson*, 28 F.2d 353, 355–56 (S.D. Cal. 1928) (emphasis supplied).

1922 Bunker Avenue Residence. Accordingly, "under the [admitted] facts which [Ms. Rey's] case shows, . . . the [Bankruptcy Court] was [not] wrong."[65]

- *In re Jarrell*[66]

*Jarrell* is likewise distinguishable from Ms. Rey's facts. Ms. Rey suggests:

[t]he district court [in *Jarrell*] put primary weight on whether 'the property [can] be divided in such a way as to retain to the bankrupt a homestead'[67] . . . . When the district court determined [the property] could not be so divided, the entire lot was subject to the homestead, including the separate rental units.[68]

Unfortunately, Ms. Rey's "suggestion" is only half true. Her quote from *Jarrell* is "cherry-picked," and ignores the District Court's *actual* determination, i.e., that the homestead should apply to the entire parcel *because the bankrupt's "gardens and . . . lawns and pagodas . . . cover all parts of the . . . property*."[69] In stark factual

---

[65] *Id.*

[66] 34 F. 2d 970 (S.D. Cal. 1929).

[67] Appellate Brief at p.21 (citing *In re Jarrell*, 34 F. 2d 970, 974 (S.D. Cal. 1929)).

[68] Appellate Brief at p.21.

[69] *See* In re Jarrell, 34 F.2d 970, 972–73, 974, 975 (S.D. Cal. 1929):

    'The property in question is on the northwest corner of Broadway and Twenty-Sixth streets, San Diego, Cal., and is 85 feet in width on Broadway and about 140 feet in length . . . ***Said property consists of the east 10 feet of lot 45, lot 46 (25 feet), lot 47 (25 feet), lot 48 (25 feet), in block 27, H. M. Higgins addition to the city of San Diego***. The [property] plat also reveals that there are ***four residences and a garage*** on this property. ***House No. 1, being the principal house and the residence of the bankrupt and his family, covering part of lots 48, 47 and 46***; house No. 2 is situated on part of the east 10 feet of lot 45, and part of lot 46, \*973 house No. 3 is situated on a part of lots 45 and 46; house No. 4 is situated on a part of lots 48, 47, and 46; and ***the garage is situated on part of lots 46 and 45***. Houses Nos. 2, 3, and 4 are smaller houses than No. 1 and are used for rental purposes. ***The garage is used by the bankrupt and his family, and the west 5 feet of the east 10 feet of lot 45 is used as a garden by the bankrupt, and between the various buildings bankrupt uses the ground for gardens, walks, pagodas, etc***. The evidence further shows that . . . the equity in said property is less than $5,000. We find that ***the entire premises were, during all the times involved in this controversy, necessary and convenient for the use of the bankrupt***

31

contrast to *Jarrell*, Ms. Rey has openly admitted that her "gardens" and other outdoor uses of the 1922 Bunker Avenue property *do not* extend over the entirety of the property (indeed, they are entirely separate from her tenants' common area). (ER-431)**.** Nor does any other structure which is "necessary and convenient for the use" of her 1922 Bunker Avenue Residence.

- *Bodden v. Community National Bank of Kern County*[70]

Finally, *Bodden v. Community National Bank of Kern County* involved a widow who, with her first husband, had previously purchased a lot with a single-family home. Upon her first husband's death, the widow became the property's sole owner. A short time later, she remarried a Mr. Bodden and, with him, financed the

---

*and his family as a place of residence*, and that the smaller residences, that is, houses 2, 3, and 4, were incidental and subordinate to the use by the bankrupt and his family of the said premises; and the evidence further shows that the entire premises is impressed with the homestead character.

. . . .

'*We determine that the property herein cannot be divided for the reason that the principal building and the gardens and the lawns and pagodas are all a part of the homestead property and cover all parts of the said described property*.

. . . .

'The property claimed as a homestead herein is primarily the home of the family, and *the smaller houses on the same said property, the evidence shows, are for rental purposes, and that the bankrupt has had them rented a part of the time during the last eight years, and that the said smaller residences are only incidental to the use of the property and not the primary use of the property. The bankrupt and his family use all the premises in controversy, and all of the property is necessary and convenient for the use of the bankrupt and his family as a place of residence, independent of the smaller residences upon said property which are rental properties . . . . The main dwelling house on this property is situated on lots 46, 47, and 48, and the gardens on the east 10 feet of lot 45*. Consequently we feel that the whole of this land and lots should be set aside and exempted to the bankrupt as his homestead hereinbefore referred to.

[70] 271 Cal. App. 2d 432, 76 Cal. Rptr. 278 (Ct. App. 1969)

construction of a larger home on the same lot in front of the property's original dwelling structure. During most of the brief tenure of their marriage, the widow and Mr. Bodden lived in the front house and rented out the rear house. They recorded a declaration of homestead with respect to the entire property.[71]

Subsequently, Mr. Bodden filed for divorce. Moreover – and unknown to the widow – Mr. Bodden encumbered the property with a second trust deed (junior to the construction lender's) securing undisclosed debts accrued with respect to his Bakersfield dress shop. The widow "learned for the first time of the second deed of trust through a notice of default and election to sell that was tacked on her door."[72]

Based on the couple's prior homestead declaration, the trial court refused to enforce the trust deed as to the entire property. The foreclosing bank sought enforcement only as to the rental property at the rear of the lot. But the Court of Appeals found the lot's physical configuration – and the homestead claimant's *physical use of all of it* – to be material. Specifically, *Bodden*:

- involved a lot which was used, in its entirety, by the homestead claimant (and by the tenant).[73] But here, by distinction, Ms. Rey does not (and cannot)

---

[71] Bodden v. Cmty. Nat. Bank of Kern Cnty., 271 Cal. App. 2d 432, 433, 76 Cal. Rptr. 278, 279 (Ct. App. 1969)

[72] *Id.*

[73] Bodden v. Cmty. Nat. Bank of Kern Cnty., 271 Cal. App. 2d 432, 435, 76 Cal. Rptr. 278, 280 (Ct. App. 1969):

> Even when viewed from a purely physical point of view, appellant's position is untenable in the light of the record, which reflects that the occupants of both houses make use of the entire lot. The distance between the back of the front house and the front of the rear house is 29 feet, and there is no fence or other physical object dividing the front and rear houses

dispute that she does not use *any* of that portion of the lot occupied by 1924 Bunker Avenue.

- involved a "landlocked" rear lot - i.e., the rear tenants had no access to the street without "cross[ing] over the [homestead claimant's] front . . . lot."[74] But here, by distinction, the Bankruptcy Court had uncontroverted evidence that Ms. Rey's 1922 Bunker Avenue Residence and the 1924 Bunker Avenue Duplex had separate, direct street access via separate driveways.

There are other important differences between *Bodden* and Ms. Rey's case.

First, the *Bodden* appeals court found it significant that the security interest sought

to be enforced against the widow had been improperly conveyed by her former

husband – without the widow's knowledge or consent.[75]

---

unless it would be two spruce trees that grow in the space between them. Respondent's clothes line is located partly alongside the rear house on the back part of the lot, and trash and other waste material is carried across the rear lot and stacked at the back of the property. A picnic table located between the two houses is used by both respondent and her tenants.

[74] *Id.*

[75] 271 Cal. App. 2d at 436, 76 Cal. Rptr. at 281 (referencing (repealed) Civil Code section 1242, which specifically prohibited the encumbrance of a married person's joint homestead without both spouses' written acknowledgment) ("Even though this is not a case of balancing equities, nevertheless we find it significant that [the widow] in no way misled [the bank]; the money was loaned to her former husband without [the widow's] knowledge; there was no attempt by her to defraud appellant. On the other hand, [the bank], a lending institution versed in matters of title, had constructive notice of the recorded homestead. With such notice it took the deed of trust from the husband to secure a pre-existing debt without asking [the widow] to release the homestead which preceded it.").

By contrast to the widow's "clean hands" in *Bodden*, the Bankruptcy Court, while likewise not balancing equities, nevertheless took note of Ms. Rey's consistent lack of candor with her creditors regarding undisclosed rental income. *See* EOR at Exhibit "18," p.586, ll.10 - p.587, ll.2:

MR. LANGLEY: I don't believe there's any intended abuse in this situation. This is not a high net [worth] property. . . . It's not a mansion where there's two mansions attached and, you know, debtor is trying to get one over on creditors. This is --

THE COURT: Well --

MR. LANGLEY: The equity in the property --

THE COURT: -- we also have the problem, Mr. Langley, of the debtor completely failed to disclose this and failed to disclose oops, I had another tenant on the property. So --

MR. LANGLEY: The debtor did --

Second, because (i) the homestead claimant used the *entire* lot; and (ii) in any event, the bank's trust deed (apparently recorded in violation of then-applicable Civil Code section 1242) was only potentially enforceable against an otherwise inaccessible, "landlocked" portion, the *Bodden* court analogized the facts before it to cases involving "mixed use" residential structures, in which business activity within the residential structure was deemed to "soften the asperities of [the homestead claimants'] struggle for subsistence while maintaining a home."[76]

Here, by contrast to Ms. Bodden, Ms. Rey originally tried to "soften the asperities of her [self-imposed financial] struggle" by seeking federal bankruptcy protection – first under Chapter 7 where she initially failed to disclose her rental income,[77] then under Chapter 13. Consequently, *Bodden* (which has been cited by only one other appeals court[78] – and for a point of law other than that offered by Ms. Rey) is *not* analogous to Ms. Rey's case.

---

THE COURT: -- it does have some feeling of trying to get one over because of the failure to disclose the information regarding this, you know, 1924 property with the second tenant that was bringing in, you know, $1,500 a month. So it does have some aspect of that.

[76] *Bodden v. Cmty. Nat. Bank of Kern Cnty.*, 271 Cal. App. 2d at 435, 76 Cal. Rptr. at 280 (quoting *Phelps v. Loop*, 64 Cal.App.2d 332, 334, 148 P.2d 674, 676).

[77] *See* EOR at Exhibit "18," p.586, ll.10 - p.17, ll.2 and n.98 *supra*.

[78] *See Wolfe v. Lipsy*, 163 Cal. App. 3d 633, 640–41, 209 Cal. Rptr. 801, 806 (Ct. App. 1985), *disapproved of on other grounds by Droeger v. Friedman, Sloan & Ross*, 54 Cal. 3d 26, 812 P.2d 931 (1991).

The remaining decisions referenced by Ms. Rey are likewise distinguishable from her facts – or are otherwise inapplicable.[79]

## IX.  Ms. Rey's Speculative Policy Arguments Are Legally And Factually Misconceived.

Ms. Rey devotes 10 pages of her brief to manufacturing two imaginary "crises" she claims will result from the Bankruptcy Court's refusal to "homestead" her rental duplex (in addition to "homesteading" her residence).  According to her, Bankruptcy Courts will be thrown into "chaos" as they struggle to apply California's judgment execution procedure to the sale of bankruptcy estate property.  Further, the specter of limited exemptions will exacerbate California's already-severe housing shortage.

Initially and importantly, no party has sought a sale of either the 1922 Bunker Avenue Residence or the 1924 Bunker Avenue Duplex which is why it is not part of the record before the Court.  Ms. Rey's arguments are, therefore, premature, speculative, procedurally improper and "red herrings."  As briefly discussed below, they are also incorrect.

---

[79] Appeals Brief at p.24.  Each of these cases involved "mixed use" single structures (not "multi-residential" land) –in which the homestead claimant *physically used* the single structure *as a residence*.

**A.** **The Bankruptcy Court's Refusal To Exempt Ms. Rey's 1924 Bunker Avenue Duplex Does Not Create "Chaos" In The Bankruptcy Courts.**

Ms. Rey claims the Bankruptcy Court's ruling "creates chaos and uncertainty"[80] in this case and in others. Ms. Rey is incorrect for two reasons.

First, Ms. Rey (mistakenly) assumes that in authorizing the sale of estate property, the Bankruptcy Court must comply with the execution sale procedures of Cal.Civ.Pro. §704.780.[81] But as this Panel is undoubtedly aware, sales of bankruptcy estate property proceed under Section 363 of the Bankruptcy Code.

The Ninth Circuit Court of Appeals heard – and rejected – an argument identical to Ms. Rey's in *In re Hyman*.[82] There, the debtors argued that because the estimated value of the home, less liens and closing costs, would create equity below their exemption allowance, "California's homestead exemption statute [i.e., See Cal.Civ.Proc. § 704.800(a)] [did] not allow the trustee to sell the homestead."[83] The Ninth Circuit disagreed:

> Independent of the trustee's obligation under section 704.800 is his obligation under 11 U.S.C. § 704(1) to act in "the best interest of parties in interest" in reducing estate property to cash . . . . *[N]othing in 11*

---

[80] Appellate Brief at p.32 ("This ruling creates chaos and uncertainty in this chapter 13 because there is no methodology for the bankruptcy court to calculate the amount of the homestead exemption it purportedly is allowing. . . . The ruling serves no practical purpose and in fact introduces a procedural morass to the bankruptcy system")

[81] Appellate Brief at pp.26, 30 ("To make this [exemption] determination and decide whether to allow such a sale, the court must comply with § 704.780 . . . . The bankruptcy court's ruling can only be effective if it could be implemented in a forced judicial sale by the hypothetical lien creditor which a trustee represents.")

[82] 967 F.2d 1316, 1320 (9th Cir. 1992).

[83] 967 F.2d at 1320 (emphasis supplied).

*U.S.C. § 704 or elsewhere in the Bankruptcy Code requires that the trustee demonstrate in advance of attempting a sale that the market price will exceed all costs and encumbrances.*[84]

Second, Ms. Rey (mistakenly) assumes her homestead exemption applies to her *lot*.[85] In fact, "[the homestead] statute defines . . . 'homestead exemption' as a *fixed dollar amount generated from the sale of the homestead*."[86] Under *Hyman* (and under California law), Ms. Rey's homestead *exemption* applies, not to the homestead itself, but to its *sale proceeds*.

Therefore, in the event of the sale of both 1922 and 1924 Bunker Avenue as a single parcel, Ms. Rey and her bankruptcy estate (i.e., her creditors) would hold undivided interests in the *sale proceeds*. The Bankruptcy Court would then determine the "validity, priority, or extent"[87] of these undivided interests. In such a case, and because the Bankruptcy Court's Order delineates the physical contours of Ms. Rey's allowed homestead,[88] it is not difficult, in the event of a sale, to (i) allocate

---

[84] *Id.*

[85] Appellate Brief at pp. 27, 31-32 ("[FMV] require[s] a willing buyer and a willing seller. There can be neither for a sale of part of an *indivisible lot* . . . . The bankruptcy court's ruling presupposes that the two independent dwelling units of the single lot can be valued separately. *How else would it be able to apportion the homestead exemption, applying it to part of the land and not to the other part, unless they each have a distinct, separate value*?")

[86] 967 F.2d at 1318 (emphasis supplied).

[87] Fed. R. Bankr. P. 7001(1), (9).

[88] EOR at Exhibit "14," p.555 (determining Ms. Rey's homestead to be "certain improved and unimproved real property in APN 8113-014-008 consisting of (a) the residence located at 1922 Bunker Avenue, El Monte, CA 91733; (b) the front yard and back yard to 1992 Bunker Avenue commencing from the front street of Bunker Avenue, El Monte, CA through to the fence at the end of the backyard to 1922 Bunker A venue; and (c) one-half of the parking garage closest to 1922 Bunker A venue.").

the sale proceeds to 1922 Bunker Avenue and 1924 Bunker Avenue on a per-square-foot basis; (ii) determine the square footage of Ms. Rey's homestead; and (iii) calculate Ms. Rey's exempt interest in the sale proceeds.

The Bankruptcy Court's Order has not – and will not – "create chaos and uncertainty." In the possible event of a sale the Bankruptcy Code and Rules provide adequate statutory and procedural means to protect the proceeds to which Ms. Rey's homestead exemption would entitle her.

### B. The Bankruptcy Court's Refusal To Exempt Ms. Rey's 1924 Bunker Avenue Duplex Does Not Exacerbate California's Housing Crisis.

Ms. Rey further claims that the Bankruptcy Court's Order will frustrate alternative dwelling units (ADUs) construction because the potential increase in homeowners' property values will place their exemptions at risk.[89] As a result, "Fewer ADU's will be constructed, and the housing crisis will continue unabated."[90]

There are several significant problems with this argument.

---

[89] Appellate Brief at p.35 ("The bankruptcy court's ruling . . . will put homeowners who wish to construct an ADU on their existing lots for any of the above-stated reasons at risk of losing the protection for their homesteads. An additional unit will always increase the fair market value of the entire parcel. If the bankruptcy court's ruling stands, that increase in value cannot be protected by the exemption and the homeowner will be at risk of losing the entire parcel, including their residence, to a judgment creditor or to a bankruptcy trustee.")

[90] *Id.*

First, as noted above, the determination of what may constitute a "homestead" is a highly fact-specific inquiry. [91]  The Bankruptcy Court's refusal to deem Ms. Rey's entirely separate, free-standing rental duplex (in which she has never lived, and not even entered since 2020) a "homestead" is no indicator of how this Bankruptcy Court (or any other court) will rule regarding another property.

Second, under the "fact sheet" she offers, Ms. Rey's rental duplex is *not* an ADU.[92]  Consequently, the Bankruptcy Court's determination as to that duplex will have little (if any) impact on the ADU construction Ms. Rey claims SB9 facilitates.[93]

Third, as discussed above, California case law consistently affirms that a separate duplex, standing independently of a family residence, will not pass muster as a "homestead." But authorities cited by the Bankruptcy Court[94] illustrate that under "use cases" different from Ms. Rey's, courts have determined that an ADU *may* be a "homestead."

---

[91] *See* n.60 *supra* and accompanying discussion and citations.

[92] EOR at Exhibit "20," p.617 (noting that, for purposes of implementing SB9, a "primary unit is distinct from an ADU or a Junior ADU.  *Examples of primary units include a single-family residence (i.e., one primary unit), a duplex (i.e., two primary units), a four-plex (i.e., four primary units), etc.)*").

[93] Appellate Brief at p.34, 35 ("The construction of ADU's, encouraged by government and more easily implemented by SB 9, has increased significantly in recent years . . . .  If the Bankruptcy Court's ruling stands, . . . [t]he legislative purpose in enacting SB 9 will be thwarted.").  Notably, Ms. Rey has submitted no authority for these bald claims.

[94] See, e.g., EOR at Exhibit "15," p.563 (citing *Vincenzini v. Fiorentini*, 2 Cal. App. 2d 739, 741, 38 P.2d 876, 877 (1934)) (allowing a homestead in a "structure by the side of the existing [22 by 24 foot] dwelling . . . [which] abuts on the original dwelling, the north wall of which serves as the south wall of the new building. . . ."); *cf.* EOR at Exhibit "20," p.617 (defining and ADU as "an attached or a detached residential dwelling unit that provides complete independent living facilities for one or more persons and is located on a lot with a proposed or existing primary residence").

Finally, California's definition of a "homestead" has not changed for 150 years. Ms. Rey failed to introduce any evidence in the Bankruptcy Court that California's 150-year-old "homestead" definition impacts California's housing supply. This Panel should not legislate; it should adjudicate and affirm the Bankruptcy Court's ruling.

## CONCLUSION

As discussed above this Panel should affirm the Bankruptcy Court's Order. On a de novo review the BAP should affirm the Bankruptcy Court's Order and conclusions of law. Based on the overwhelming evidence admitted in the Bankruptcy Court, the Bankruptcy Court's findings of facts were not clear error and should also be affirmed on that basis as well.

DATED: October 30, 2023          Respectfully submitted,

                                 LAW OFFICE OF THOMAS H. CASEY, INC.
                                 A PROFESSIONAL CORPORATION

                                 By:  /s/Thomas H. Casey
                                      Thomas H. Casey
                                      Counsel for Appellee Peter Urquijo

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

The undersigned certifies that the following parties have an interest in the outcome of this appeal:

Maria Teresa Melendez Rey, Appellant

Dated: October 30, 2023          Respectfully submitted,

LAW OFFICE OF THOMAS H. CASEY, INC. A PROFESSIONAL CORPORATION

By:   /s/Thomas H. Casey
        Thomas H. Casey
        Counsel for Appellee Peter Urquijo

## **CERTIFICATE OF COMPLIANCE**

This Appellee Responsive Brief, exclusive of the table of contents, table of authorities, attorney signature block, and certificates is 12,552 words in text, including headings, footnotes, and quotations as counted by Microsoft Word, the word processing system used to prepare this Brief. This Brief has been prepared in a proportionally-spaced typeface utilizing Times New Roman 14-point font.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Dated: October 30, 2023             Respectfully submitted,

                                    LAW OFFICE OF THOMAS H. CASEY,
                                    INC. A PROFESSIONAL
                                    CORPORATION

                             By:   /s/Thomas H. Casey
                                    Thomas H. Casey
                                    Counsel for Appellee Peter Urquijo

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2023, I electronically filed the foregoing document with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

<div style="margin-left: 45%;">

Respectfully submitted,

LAW OFFICE OF THOMAS H. CASEY, INC. A PROFESSIONAL CORPORATION

By:  /s/Thomas H. Casey

Thomas H. Casey
Counsel for Appellee Peter Urquijo

</div>